In re Jack F. BAZEMORE, Sr., Debtor.

In re Jack F. BAZEMORE, Jr., Debtor.

**Anne MOORE, Chapter
7 Trustee, Movant,**

v.

**Richard B. EASON, Jr., Respondent.**

**Bankruptcy Nos. 96–60815, 96–60816.**

United States Bankruptcy Court,
S.D. Georgia,
Statesboro Division.

Jan. 16, 1998.

Richard B. Eason, Jr., Eason, Kennedy & Associates, Atlanta, GA, for Debtors.

Anne R. Moore, Attorney at Law, Statesboro, GA, for Trustee.

Curtis V. Cheney, Jr., Attorney at Law, Reidsville, GA, for Anne Moore.

Shari S. Miltiades, Karsman, Brooks & Calloway, Savannah, GA, for Dairyland Insurance Company.

### *ORDER*

JOHN S. DALIS, Chief Judge.

Anne Moore, the Chapter 7 trustee in the above styled cases, by motion seeks leave to examine Richard B. Eason, Jr. pursuant to Federal Rule of Bankruptcy Procedure (FRBP) 2004 and for production of records by him. Mr. Eason opposes the motion. Based upon the evidence presented at hearing and applicable case authority, the motion is granted.

On February 27, 1993, Mr. Bazemore, Jr. was driving his father's truck when a passenger, Lori Ellis, fell out of the truck and injured her leg due to a faulty door. Ms. Ellis thereafter sued both Messrs. Bazemore in state court for personal injury sustained in the accident. The automobile insurer of Mr. Bazemore, Sr., Dairyland Insurance Company, retained attorney Richard B. Eason, Jr. to represent the Bazemores in the suit brought by Ms. Ellis. Settlement offers were made by both Ms. Ellis to Dairyland and Dairyland to Ms. Ellis. Both parties rejected the offers. From deposition testimony the Bazemores remember being told only about Dairyland's offer and the subsequent rejection by Ms. Ellis.

On March 25, 1996 the Bazemores lost the state court action and a $50,000.00 verdict was rendered against them. Dairyland's policy was limited to $15,000.00 of coverage, therefore the Bazemore's are obligated to pay the remaining $35,000.00 of the judgment. On April 22, 1996, Mr. Eason moved in the state court case for a judgment notwithstanding the verdict or in the alternative for a new trial. On October 15, 1996, Mr. Eason filed the above referenced Chapter 7 cases for both Messrs. Bazemore and ob-

tained a stay of the state court case. The debtors listed the $50,000.00 judgment in their Schedule F as an unsecured nonpriority claim. The debtors were examined pursuant to FRBP 2004 by the trustee, Ms. Moore, regarding their representation by Mr. Eason and Dairyland's involvement in their state court case. Mr. Eason and Dairyland's attorney were present at the examination. Mr. Bazemore, Jr. admitted in his examination that he filed bankruptcy because of the verdict for Ms. Ellis.

Mr. Eason refuses to be examined or to produce non-public records regarding his representation of the debtors in state court. He asserts an attorney-client privilege and that the exam is premature because a final judgment and, thus claim, has yet to be rendered against the debtors. The trustee seeks to examine Mr. Eason and the documents to determine whether either debtor has a cause of action against Mr. Eason or Dairyland for bad faith refusal to settle and malpractice, which could augment the bankruptcy estates.

The issue presented is whether the trustee in these Chapter 7 individual bankruptcy cases has the authority to waive the attorney-client privilege of the debtors, thus requiring the debtors' insurance company appointed attorney to be deposed regarding his representation of the debtors in the state court case. This examination would aid the trustee in determining whether the bankruptcy estates of the debtors have a cause of action against the attorney and insurance company for bad faith or malpractice. The trustee may waive the privilege.

Federal law applies to this motion to determine whether the trustee may waive the attorney-client privilege. The Federal Rules of Evidence apply to bankruptcy cases. FRBP 9017.[1] Regarding a claim of privilege, Federal Rule of Evidence (FRE) 501[2] re-

---

1. Federal Rule of Bankruptcy Procedure 9017. Evidence.
   The Federal Rules of Evidence and Rule 43, 44 and 44.1 F.R.Civ.P. apply in cases under the Code.

2. Federal Rule of Evidence 501. General Rule. Except as otherwise required by the Constitution of the United States or provided by Act of Con-

gress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an

quires a bankruptcy court to use federal common law, unless state law supplies the rule of law. *In re Kroh,* 80 B.R. 488, 489 (Bankr.W.D.Mo.1987). Under FRBP 2004,[3] "(q)uestions concerning financial condition of a debtor; location, nature and amount of assets and liabilities; size of the estate; and information relating to how the estate may be augmented are questions of federal bankruptcy law." *Id., citing International Horizons, Inc. v. Committee of Unsecured Creditors (In re International Horizons, Inc.),* 689 F.2d 996, 1003 (11th Cir.1982). The trustee in this case seeks through her motion to determine information relating to possible claims of the Bazemores' estates' assets. Thus, federal law applies.

■ Moreover, the question of privilege asserted in bankruptcy court is a procedural question and existing federal law is to be used. *In re International Horizons, Inc.,* 14 B.R. 199 (Bankr.N.D.Ga.1981), *aff'd,* 16 B.R. 484 (N.D.Ga.1981), *aff'd,* 689 F.2d 996 (11th Cir.1982). The impact of privilege is on the method of proof in a case and in comparison any substantive aspect appears tenuous. *id.* Federal law controls this determination.

■ Utilizing federal law, Mr. Eason's argument that an examination of his representation of the debtors is premature because a final judgment has not yet been rendered against them is unpersuasive. FRBP 2004 is broadly read.

The scope of a Rule 2004 examination is "unfettered and broad," ... *In re GHR Energy Corp.,* 33 B.R. 451, 453–54 (Bankr.

D.Mass.1983); *In re GHR Companies, Inc.,* 41 B.R. 655, 660 (Bankr.D.Mass.1984). Examinations under Rule 2004 are allowed for the "purpose of discovering assets and unearthing frauds" and have been compared to "a fishing expedition." *In re GHR Energy Corp.,* 33 B.R. 451, 453 (Bankr.D.Mass.1983)

9 Collier on Bankruptcy, Para. 2004.02[1] (15th ed. revised 1997). The trustee's motion is encompassed under the language of FRBP 2004: "financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." This broad rule allows the trustee to determine if the estate can be augmented by asserting claims against others. Neither the wording of the statute, nor case law suggest the contrary based upon Mr. Eason's motion for judgment notwithstanding the verdict or in the alternative for a new trial in the state case. The debtors included the $50,000.00 debt in their schedules and Mr. Bazemore, Jr. admitted in his deposition his bankruptcy was filed because of the verdict. The trustee seeks to determine whether the estate has a claim against Mr. Eason and Dairyland for malpractice and bad faith. The events that may give rise to this claim have already occurred and FRBP 2004's broad scope clearly encompasses investigation into these events.

■ Outside of bankruptcy the attorney-client privilege belongs to the client alone. *In re Impounded Case (Law Firm),* 879 F.2d 1211, 1213 (3d Cir.1989). The filing of bankruptcy by an individual debtor

---

element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law.

3. Federal Rule of Bankruptcy Procedure 2004. Examination provides in part relevant to this case:
(a) Examination on Motion. On motion of any party in interest, the court may order the examination of any entity.
(b) Scope of Examination. The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjust-

ment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefore, and any other matter relevant to the case or to the formulation of a plan.
(c) Compelling Attendance and Production of Documentary Evidence. The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial....

requires a determination as to whether anyone else controls the privilege. The inquiry requires balancing the interests of a full and frank discussion in the attorney-client relationship and the harm to the debtor upon a disclosure with the trustee's duty to maximize the value of the debtor's estate and represent the interests of the estate. *See Commodity Futures Trading Comm'n v. Weintraub,* 471, U.S. 343, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

■ A trustee of a corporate Chapter 7 debtor has the power to waive the privilege for the bankrupt company, because the trustee's role includes fiduciary and management duties toward the company. *Weintraub,* 471 U.S. at 356–58, 105 S.Ct. at 1995–96. *In Weintraub,* the Supreme Court refused to address whether this waiver power extends to the trustee of an individual debtor in Chapter 7, but stated "(i)f control over that privilege passes to a trustee, (of an individual Chapter 7 debtor) it must be under some theory different from the one that we embrace in this case." *Id.* The Supreme Court, therefore, left open the ability of the trustee in a Chapter 7 individual's case to hold the waiver power.

The cases finding a trustee does not have the power to waive attorney-client privilege of the individual debtor focus on personal harm to or control over the debtor and the impeding of attorney-client communication. *In re Silvio,* 27 B.R. 28 (Bankr.S.D.Fla.1982) (where an individual owner of all the stock of a bankrupt corporation also filed for bankruptcy the trustee could waive the privilege of the corporation because only fiscal loss of assets could arise, but could not waive for the individual because the disclosure could involve criminal conduct and, thus, a possible loss of personal freedom i.e. prison). *In re Hunt,* 153 B.R. 445 (Bankr.N.D.Tex.1992) (in the context of a liquidating trust of Chapter 11 individual debtors' estates, a trustee's independent trustee's attempt to avoid fraudulent transfers and pre-petition preferences of the individual debtors, by examining the debtors' attorneys would chill a full and frank attorney-client communication if sensitive information might be revealed during bankruptcy).

Courts reaching the opposite conclusion, finding that the trustee may waive the privilege of an individual debtor focus on the lack of an adverse effect on the debtor based upon the facts of the case. *In re Williams,* 152 B.R. 123 (Bankr.N.D.Tex.1992) (trustee holds waiver over Chapter 11 debtors of liquidating trusts to avoid fraudulent conveyances because the debtors waived their privileges regarding avoidance as fiduciaries of the trusts, and the debtors would not be harmed by the waiver); *In re Fairbanks,* 135 B.R. 717 (Bankr.D.N.H.1991) (trustee held waiver privilege of individual in Chapter 7 when the debtor disappeared, the trustee was the financial "alter ego" of the debtor, and administration of the estate was required). *In re Smith,* 24 B.R. 3 (Bankr. S.D.Fla.1982), is a case with facts similar to the Bazemores. A wrongful death state judgment caused the debtor to file for bankruptcy. The trustee held a Rule 205 examination of the debtor to determine if the estate might have a cause of action for bad faith refusal to settle and malpractice against the liability insurance carrier and appointed attorneys of the debtor. The debtor refused to answer questions at his Rule 205 examination, claiming attorney-client privilege, as instructed by his insurance company attorneys. *Id.* at 4. The court found the trustee had waiver power by operation of law. *Id.* at 5.

■ The policies against a finding that trustees have waiver power in individual bankruptcies do not exist in this case. Harm will not come to the Bazemores, because, as in *Smith,* the inquiry is aimed only at augmenting the estates through possible causes of action that the debtors, and in turn the bankruptcy estates, might have against Mr. Eason and Dairyland. Furthermore, the chilling of the attorney-client communication for fear of later disclosure, which may harm the client, does not arise from the Bazemores' situation. The FRBP 2004 examination of Mr. Eason is to determine what harm occurred to the debtors and are estate assets, not what harm the debtors may have caused.

In seeking to maximize the value of the estate, the trustee must investigate the conduct of prior management to uncover and assert causes of action against the

debtor's officers and directors.... It would often be extremely difficult to conduct this inquiry if the former management were allowed to control the corporation's attorney-client privilege and therefore to control access to the corporation's legal files.... The Code's goal of uncovering insider fraud would be substantially defeated if the debtor's directors were to retain the one management power that might effectively thwart an investigation into their own conduct. *Weintraub*, 471 U.S. at 353–54, 105 S.Ct at 1993. While this quote speaks factually to a corporate debtor, the underlying policy also addresses the Bazemores situation. Mr. Eason is in a position similar to that of the directors. The answer to this motion he prepared on the Bazemores' behalf does not seek to protect any rights of his clients, but to protect himself by keeping confidential his actions during the state court case. He is "effectively thwart(ing) an investigation into (his) own conduct[.]" *Weintraub*, 471 U.S. at 353–54, 105 S.Ct. at 1993.

The trustee is required to determine the assets and to maximize the value of those assets. *See Weintraub*, 471 U.S. at 352, 105 S.Ct. at 1992–93. It is persuasive that an individual debtor should alone hold the attorney-client privilege waiver power when potential harm to or control over his person possibly exists from a disclosure, or communication with an attorney may be chilled. However, as here, when the trustee seeks to determine whether the bankruptcy estate holds a cause of action against an insurance company and the attorney it appointed for potential bad faith in settlement and malpractice during a state court case, which judgment precipitated the debtors' bankruptcy, the trustee holds the right to waive the attorney-client privilege.

It is therefore ORDERED, that the Chapter 7 trustee's, motion for examination of Richard B. Eason, Jr. and for production of records is granted. The examination will take place upon not less than 10 days notice from the trustee served upon Mr. Eason and compliance with FRBP 9016.