**In re John RICE, and Sherry Rice, Debtors.**

**Bankruptcy No. 397–35651PSH7.**

United States Bankruptcy Court, D. Oregon.

Aug. 18, 1998.

Gerald R. Peterson, Todd Trierweiler and Associates, Portland OR, for Debtor.

Kenneth S. Eiler, Seaside, OR, for Trustee.

## MEMORANDUM OPINION

POLLY S. HIGDON, Chief Judge.

This opinion addresses important issues of first impression in this District which involve the attorney-client privilege and the work product doctrine. Through a motion for turnover, the Chapter 7 trustee argues that as the debtors' attorney-client privilege passed to him upon the filing of their bankruptcy petition he may waive it and obtain possession of the debtors' and the debtors' attorney's personal injury records. The debtors refuse to turn over *any* records, claiming that despite their filing the privilege remains with them, and their attorney claims protection of any of his work product in his personal injury files through the work product doctrine.

### The Facts

During 1996 one of the debtors, Sherry Rice, who is a realtor and who spends many hours in her car, was in two separate car accidents involving different drivers. In each case she suffered injuries to her neck, spinal cord and lower back. She and her attorney, Mr. Rex Smith, were pursuing both personal injury claims when she and her husband found it necessary to file a Chapter 7 bankruptcy petition on July 9, 1997.

The Schedule B which they filed with the petition described the asset as: "2 separate personal injury claims pending" and the value of the claims as "unknown". Their Schedule C exemption for that asset was stated as: "2 separate personal injury claims pending" with the value of the claimed exemption as "$10,000" and the market value of the asset as "unknown". The law providing for this exemption was shown as O.R.S. 23.160(1)(j)(B). The trustee did not object to this exemption.

On October 6, 1997, the debtors filed an amendment to both schedules. This Schedule C recited: "2 separate personal injury claims pending; any component of personal injury claims settlements relating to loss of future income" with an exempt value claimed of "100%" and a market value stated as "unknown." The law cited was O.R.S. 23.160(1)(j)(C). Their new Schedule B echoed this new asset description.

On October 27, 1997, the debtors tried again. This time their Schedule C stated: "2 separate personal injury suits pending" with an exempt value of "$10,000" and a market value of "unknown." The cited law was O.R.S. 23.160(1)(j)(B). In addition it recited: "Any component of personal injury claims settlements relating to loss of future income" with an exempt value of "$100" and an unknown market value. The cited law was O.R.S. 23.160(1)(j)(C). The new Schedule B contained the identical new asset description.

Still not satisfied, on May 29, 1998 the debtors filed yet another Schedule B and C. This time Schedule C recited: "Any component of personal injury claims settlements relating to loss of future income." The cited law was O.R.S. 23.160(1)(j)(C) with a value of "100%" and market value as unknown. However, it went on to recite *twice:* "Personal injury suit pending" with a value of the claimed exemption for each as "$10,000" and an unknown market value. The cited statute for these was O.R.S. 23.160(1)(j)(B). Schedule B mirrors the asset description in Schedule C.

### The Personal Injury Claims are Property of the Estate

■ This lengthy description of the exemption amendment history is relevant to the issues before me because the debtors' first defense is that the personal injury claims are not property of the estate. Thus, the trustee has no right or responsibility to insist on their attorney's file. The debtors, while admitting that under the Bankruptcy Code, unlike the Bankruptcy Act, "all legal and equitable interests of the debtor in property as of the commencement of the case," [1] including the two personal injury claims, became property of the estate, insist that they regained the claims, free of any interest the trustee, as estate administrator, may have had in them, because they declared the claims exempt property and the trustee did not file an objection to that exemption within 30 days after the conclusion of the meeting of creditors.

Section 522(b) allows an individual debtor to exempt certain property from property of the estate. It further provides that "unless a party in interest objects, the property claimed as exempt on such list, is exempt." [2] Bankruptcy Rule 4003(b) allows the trustee or any creditor 30 days from the conclusion of the meeting of creditors to file an objection to a claimed objection. The Supreme Court has held that no one may contest the validity of a claimed exemption after the relevant 30 day period, absent a timely request for an extension. [3]

It is logical to conclude that if an asset, which is admittedly property of the estate upon filing, is declared exempt, no timely objection is raised to that exemption, and it is not formally abandoned under § 554(a) or (b) during estate administration, at some point in time thereafter before estate closing will no longer be estate property and the trustee will have no claim in it. [4] This is an area of the law for which the Bankruptcy Code has no clear answer. However, it is not necessary for this court to resolve the nutty issue of when property declared exempt is no longer property of the estate while the estate remains open. That is because the debtors have failed to notice that Bankruptcy Rule 4003(b) also allows the trustee 30 new days to object to exemptions after they file any amendment to their list of claimed exemptions. Every time the Rices filed a new Schedule C they automatically triggered a new 30 day objection period for the trustee to use if he chose. After their last amendment he timely took advantage of that renewed opportunity. An asset which has been claimed exempt cannot be said to no longer be property of the estate before the court has had an opportunity to rule on the validity of a timely objection to the exemption.

---

1. Section 541(a). Unless otherwise specifically stated, all section references are to 11 U.S.C. § 101 *et seq.*, the Bankruptcy Code.

2. Section 522(1).

3. *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

4. But see § 544(d) which seems to suggest otherwise.

■ There is another reason why the two personal injury claims are property of this estate. It goes to the form of the Oregon exemption at issue here. In describing exemptions available under Oregon law [5] O.R.S. 23.160(1)(j) states:

> The debtor's right to receive, or property that is traceable to:
>
> (A) An award under any crime victim reparation law;
>
> (B) A payment or payments, not to exceed a total of $10,000, on account of personal bodily injury of the debtor or an individual of whom the debtor is a dependent; and
>
> (C) A payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

Under this statute the exempt property which the debtor receives is not the personal injury claim itself but merely a right to payment in a certain amount from any proceeds generated from that claim. This distinction was pointed out by the Ninth Circuit under different facts in *In re Reed*, 940 F.2d 1317 (9th Cir.1991).[6] Mr. Reed claimed his interest in his homestead exempt, listing the value of his exemption on his bankruptcy schedules as $45,000.[7] Upon sale of the home the debtor objected to the trustee's claim of sales proceeds. The court stated:

> California does not permit a debtor to exempt his entire interest in a homestead but specifically limits the dollar amount up to which a homestead exemption can be claimed ... The language of the relevant statutes makes it clear that the "homestead exemption" in California is merely a debtor's right to retain a certain sum of money when the court orders sale of a homestead in order to enforce a money judgment; it is not an absolute right to retain the homestead itself ... In this case no one objected to Debtor's homestead exemption within thirty days of the creditors' meeting. Therefore a right to $45,000 of any net proceeds from sale of the residence passed out of the bankruptcy estate on November 29, 1986 ... However, the residence itself and all remaining net proceeds were still part of the bankruptcy estate and subject to administration by the Trustee.

*Reed* at 1321.

The exemptions under subsections (B) and (C) of O.R.S. 23.160(1)(j) clearly provide a debtor with an exemption only in a "payment" of a stated amount. Even if it were found that Rices' exemptions are no longer property of the estate,[8] the personal injury claim itself as well as any proceeds generated from the claim over and above the amounts described in (B) and (C) are property of the estate.

### In this Case The Trustee Does Not Hold the Debtors' Attorney–Client Privilege; Consequently, He May Not Waive It

After Mr. Smith, the debtors' personal injury attorney, had declined the trustee's invitation to be appointed under § 327(e) [9] to represent the estate in pursuing the personal injury claims, the trustee filed a motion against the Rices and Mr. Smith to compel turnover of "records in their possession related to the debtors' pending personal injury actions." As the trustee pointed out, these claims were listed as assets of the Rice's

---

5. Oregon has taken the opportunity afforded it by the Bankruptcy Code of "opting out" of the federal exemptions provided in the Code. O.R.S. 23.305. If a state takes that step, state exemptions rather than federal exemptions apply in a case. § 522(b)(1).

6. *See also, In re Hyman,* 967 F.2d 1316 (9th Cir.1992).

7. This was the correct form and amount of exemption under California law at that time. Cal. Civ.Proc.Code § 704.720.

8. In *Reed,* because no timely objection to the claimed exemption had been made the court stated that the exempt property passed out of the estate to the debtor. Such is not the case here where the trustee has filed a timely objection.

9. The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

estate. He states that without the records he has been unable to evaluate them to determine either the extent to which any portion of potential proceeds might be exempt under Oregon law or the overall value of the claims. He believes he has a fiduciary duty to the estate to obtain this information and cannot do so without review of the records.

The Rices responded by asserting their attorney-client privilege. Mr. Smith has stated that he believes he would have a direct conflict of interest if he were to represent the estate and relies on the work product doctrine to protect any work product he has produced in pursuing these claims for the debtors.

The trustee concedes that some of the records might be privileged, but, citing *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372(1985) and *In re Foster*, 217 B.R. 631 (Bankr.D.Colo.1997), he contends that he holds the debtors' attorney-client privilege and may waive the right to that privilege to obtain the records, including any work product.

Section 542(e) states:

Subject to any applicable privilege, after notice and hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

The debtors suggest that the introductory phrase to this section recognizes that the court must honor a debtor's attorney-client privilege when asserted. The Supreme Court has rejected that interpretation. "...statements made by Members of Congress regarding the effect of § 542(e) 'specifically deny any attempt to create an attorney-client privilege assertable on behalf of the debtor against the trustee.'" *Weintraub* at 350–351, 105 S.Ct. 1986 *citing In re O.P.M. Leasing Services, Inc.*, 13 B.R. 54, 60 (Bankr.S.D.N.Y.1981), *aff'd*, 670 F.2d 383 (2d. Cir.1982) "Rather, Congress intended that the courts deal with this problem ... " *Id.* at 351, 105 S.Ct. 1986.

Fed.R.Bankr.P. 9017 provides generally that the Federal Rules of Evidence apply in cases under the Bankruptcy Code. Federal Rule of Evidence 501 provides that except as otherwise required by the Constitution or other statutes or rules, privileges are governed by principles of common law "as they may be interpreted by the courts of the United States in light of reason and experience" except where state law supplies the rule of decision with respect to an element of a claim or defense, in which case the state law of privileges applies. Here the debtors' defense is to the trustee's exercise of a power under the Bankruptcy Code. The Federal Rules of Evidence apply.

The holder of the privilege has the burden of demonstrating that it applies. *United States v. Blackman*, 72 F.3d 1418, 1423 (9th Cir.1995) *citing Clarke v. American Commerce National Bank*, 974 F.2d 127, 130 (9th Cir.1992).

The elements of the attorney-client privilege are: (1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived. *United States v. Margolis*, 557 F.2d 209, 211, (9th Cir.1977) *citing* 8 Wigmore Evidence § 2292 at 554 (McNaughton rev.1961).

The privilege extends not only to communications made in confidence by the client but also to the attorney's advice in response. It also extends to "those papers prepared by an attorney or at an attorney's request for the purpose of advising a client, provided the papers are based on and would tend to reveal the client's confidential communications." *Id.* at 211.

It is my responsibility to apply Rule 501 "in light of reason and experience." I interpret this as a directive that, absent applicable, binding precedent, I must decide application of the privilege based on the equities of the particular facts and circumstances of each case. Our circumstances are somewhat unusual in that both the estate and the debt-

ors have a legally recognized, continuing monetary interest in these personal injury claims. The claims are assets of the estate. The court agrees with the trustee that he has a fiduciary duty to pursue them diligently in an attempt to maximize return to creditors. For that purpose he must hire an attorney who, in turn, must take over conduct of the suits and proceed to completion. However, as described above, absent complete disallowance of her claimed exemptions [10] Ms. Rice has a right to payment of a certain amount from any proceeds generated by these two claims. These payments will be for her bodily injury and for loss of future earnings to the extent reasonably necessary for her support.

In 1995 the Oregon legislature amended O.R.S. 23.160(1)(j) by removing from subsection (B) the language "not including pain and suffering or compensation for actual pecuniary loss." In the past this language had been the source of some confusion. The statute's legislative history gives no explanation for the change. Despite the legislature's attempt to clarify the language of the statute it may still be unclear what form of payments arising out of a personal injury claim are covered by the present language of subsection (B).

Under traditional remedy rules, a personal injury award is composed of three kinds of losses. First, there are the time losses, for which the plaintiff can recover the value of any lost time or earning capacity. Second, there are expenses incurred by reason of the injury, usually medical expenses and kindred items. Third, there is whatever loss is involved in pain and suffering in its various forms. DOBBS, REMEDIES § 8.1 p. 540 (1973). With the removal of the language in 1995 it could be argued that the legislature intended that the present language of subsection (B) includes all of these traditional elements. On the other hand, as the legislature has specifically provided an exemption for the loss of future earnings but has not mentioned the loss of past earnings, it could

be argued that it was the legislative intent not to provide an exemption for any such payments.

■ If the trustee successfully concludes the suits, the defendants will provide a certain pot of money as damages. These moneys must then be allocated to the various elements of the personal injury claim recognized by state law. This allocation process places Ms. Rice and the trustee in a direct adversarial position. This is because not only will the trustee want to earmark a maximum amount of any funds received from the defendant toward those forms of loss which are not exempt, but he has already filed an objection to Ms. Rice's exemption on the basis that the amount of funds she may receive in the form of loss of future earnings pursuant to O.R.S. 23.160(j)(1)(C) may be in excess of what is reasonably necessary for her support. To summarize, both the estate and Ms. Rice have a continuing interest in the personal injury claims and, given the language of the applicable exemption statute, their respective interests are perforce adversarial. For this reason Ms. Rice needs to retain her own attorney to represent her interests during the litigation process and should be able to rely on the confidentiality of her past and continuing communications with her attorney for that purpose. Whether or not she continues to retain Mr. Smith, under both § 327(e) and Oregon Disciplinary Rule 5–105(E) [11] he cannot represent the trustee in this matter.

■ In examining whether the trustee obtains and may waive the debtors' attorney-client privilege this court was immediately struck by the many questions which surround it in an individual case which remain unexamined by the courts. In *Weintraub*, the Supreme Court held that the trustee could waive the debtor's attorney-client privilege with respect to communications that occurred *before* the filing of the bankruptcy

---

10. The court has set the objections for hearing. They do not challenge Ms. Rice's claim to a minimum of one $10,000 exemption.

11. "Current Client Conflicts—Prohibition. Except as provided in DR 5–105(F), a lawyer shall not represent multiple current clients in any matters when such representation would result in an actual or likely conflict."

petition.[12] However, there the debtor was a corporation which, postpetition, did not have any ongoing business communications apart from those involving the trustee. If a court enters a similar holding in an individual case would the debtor retain the privilege as to her postpetition communications? Would it be practical to divide a privilege by time? What would be the effect of finding a transfer and subsequent waiver of one privilege on any other privileges which the debtor, and any spouse, filing or nonfiling, might hold at the time of filing? Although these questions are complex, they should be thoroughly considered and addressed before a court rules that the attorney-client privilege passes to the trustee in any individual case.

The trustee's reliance on *Foster* and *Weintraub* is misplaced. As indicated, *Weintraub* involved a corporate debtor. The Court reasoned that outside bankruptcy a corporation can speak only through its managing agents. It is these agents who hold, and have the ability to waive, the corporate attorney-client privilege. "...the actor whose duties most closely resemble those of management should control the privilege in bankruptcy unless such a result interferes with policies underlying bankruptcy law."[13] That actor was the trustee. This rationale provides no basis for finding that control of the privilege in an individual Chapter 7 should lie with the trustee. The Court recognized that, stating "if control over [the attorney-client] privilege passes to the trustee [in an individual case] it must be under some theory different from the one we embrace in this case." *Id.* at 356–357, 105 S.Ct. 1986.

*Foster* is the most thoroughly reasoned case to date on the issue of passage of the attorney-client privilege in an individual Chapter 7 case and has similar facts to the case before me. But the facts do vary and I believe those variances are critical. In *Foster* the trustee sought to compel the debtor's prebankruptcy litigation counsel to turn over records of three prepetition actions the debtor had filed against third parties. The debtor and his counsel refused on several

grounds, which included the attorney-client privilege, the work product doctrine, the Fifth Amendment right to remain silent and the Sixth Amendment right to assistance of counsel. The trustee withdrew his motion as to those documents the debtor claimed to implicate his constitutional rights. The court held that

> "the right to assert or to waive the attorney-client privilege passes from a debtor to a bankruptcy trustee where, as in this particular situation it involves recovery of assets of the estate in the nature of prepetition civil actions."

*Foster* at 634.

The crucial factual difference between those of *Foster* and this case is that Mr. Foster claimed no exemption to any portion of the three lawsuits. He was not in an adversarial relationship with the trustee. Rather, he had a commonality of interest with the trustee to see that they were pursued vigorously.

### The Trustee May not Obtain Mr. Smith's Work Product At This Time

■ The parameters of the work product doctrine are still emerging. *In re Grand Jury Proceedings,* 604 F.2d 798, 801 (3rd Cir.1979). Indeed, courts disagree on whether it is a "doctrine", an "immunity" or a "privilege." They also disagree on whether the attorney alone or both the attorney and the client may raise it. *Id.* (Client may assert the attorney work product privilege to the extent his interests would be affected by disclosure), *But see Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136 (D.Del.1977). The Supreme Court has identified it as a "qualified privilege." It is distinct from and broader than the attorney-client privilege[14] in that the former protects only communications between the attorney and his client. Unlike the attorney-client privilege, its purpose is not to encourage free and confidential communications between the client and the attorney. Rather, it is designed to assure that the lawyer "may work with a certain degree of privacy, free from unnecessary intrusion

---

12. *Weintraub* at 353, 105 S.Ct. 1986.

13. *Id.* at 351, 105 S.Ct. 1986.

14. *Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451.

by opposing parties and their counsel." *United States v. Nobles,* 422 U.S. 225, 237, 95 S.Ct. 2160, 2169, 45 L.Ed.2d 141, 150 (1975).

■ The proponent of the doctrine has the burden of establishing that materials fall within its purview. *Sandberg v. Virginia Bankshares, Inc.,* 979 F.2d 332, 335 (4th Cir.1992). Work product covered by the doctrine falls into two categories, fact work product and opinion work product. *In re Antitrust Grand Jury,* 805 F.2d 155, 163 (6th Cir.1986). The former consists of materials compiled by agents of the attorney and the attorney herself which do not contain the mental impressions, conclusions or opinions of the attorney. *Id.* The latter consists of the attorney's mental impressions, conclusions, opinions, or legal theories. *Id.* However, to fall within the doctrine, all must be prepared in anticipation of litigation and the proponent has the burden of demonstrating that fact. *Conoco, Inc. v. United States Dep't of Justice,* 687 F.2d 724, 730. Once the movant meets that burden the opposing party has the burden of overcoming the protection. *Id.*

■ Reliance on the doctrine may be waived. *United States v. Nobles,* 422 U.S. 225, 239, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141, 152 (1975) What constitutes waiver depends on the individual circumstances. *Id.* Further, although the doctrine protects physical documents, it does not protect disclosure of the underlying facts in the documents. *Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981). The opposing party may still discover the facts in those documents by other means of discovery. *Id.*

It may be overcome for good cause. Fed. R.Civ.Pro. 26(b)(3), applicable in bankruptcy through Bankruptcy Rule 7026 and 9014, allows a party to overcome the doctrine as to fact work product upon showing of "substantial need" and an inability to "obtain the substantial equivalent of the materials by other means" without undue hardship. Courts are in disagreement as to whether the opinion work product protection is absolute. *See In re Antitrust Grand Jury,* 805 F.2d 155 (6th Cir.1986). They do agree, however, that a far greater showing of necessity is required to overcome its protection than with fact work product. *Id.*

This court has already found that given the unusual facts of this case, the trustee and Ms. Rice hold adversarial positions. That is sufficient reason to refuse at this time to enter an order directing Mr. Smith to turn over all his litigation files on the two personal injury claims to the trustee. However, I am not foreclosing the possibility, upon appropriate showing, of a future order directing Mr. Smith to turn over specifically identified materials from his file which would otherwise be covered by the work product doctrine as well as any documents which this court determines are not covered by the doctrine.

### Use of Privilege Log and In Camera Review

■ For the sake of the efficient administration of this case I have further direction. The Bankruptcy Code has placed a fiduciary duty on the trustee to pursue the two personal injury claims for the benefit of the estate and this opinion has reinforced that point. It is neither efficient nor reasonable, nor perhaps even monetarily feasible, for the trustee to commence these duties by conducting discovery which Ms. Rice's attorney has already commenced or even completed. Ms. Rice and Mr. Smith should recognize that although they are, for some purposes, adversaries of the trustee, in one very important way, obtaining a maximum recovery from the defendants, their interests are in harmony. There are many facts surrounding the accident and its aftermath which Ms. Rice should be able to supply the trustee which would benefit the trustee in his efforts and whose revelation should not damage her exemption claim. She should provide this information to the trustee informally and at the least expense to all parties.

Ms. Rice and Mr. Smith should also recognize that the attorney-client privilege is quite limited in scope. Blanket assertions of the privilege will always be looked upon with great disfavor. It is unlikely that the attorney-client privilege and work product doctrine would protect all records they have which pertain to the claims. All relevant documents in their possession which they

determine to be nonprivileged and not work product should immediately be shared with the trustee. (The court should not have to say that just because a document is in an attorney's file does not make it work product or nondiscoverable.)

Ms. Rice must assert her attorney-client privilege through use of a privilege log. Mr. Smith shall immediately provide this log to the trustee which lists all records held by either his client or himself for which they claim the privilege. As to each document such log shall identify the attorney and client involved, the nature of the document, all persons or entities shown on the document to have received or sent the document, all persons or entities known to have been furnished the document or informed of its substance and the date the document was generated, prepared or dated. To the extent possible without violating the alleged protection, he must also provide sworn statements on the subject matter of each document.[15]

After reviewing the log, if the trustee wishes to contest the application of the privilege as to any document he may ask the court for an in camera review of them. He should be prepared to show that there is a factual basis adequate to support a good faith belief by a reasonable person that an in camera inspection may reveal evidence that information in the materials is not privileged.

### Use of Bankruptcy Rule 7026(b)(3)

Mr. Smith shall also immediately identify for the trustee, by document, all relevant records for which he claims the work product doctrine. If the trustee desires to obtain any documents from Mr. Smith which the latter claims are work product, he may file a motion under Bankruptcy Rule 7026(b)(3). Given their adversarial positions on the exemption issue, the court will treat the trustee and Mr. Smith as "parties" for purposes of the rule. Mr. Smith should be prepared to prove that any such documents consist of "work product" and that they were prepared "in anticipation of litigation" as these terms are defined through Ninth Circuit case law.

### Conclusion

The two personal injury claims are property of the estate. Because of an actual conflict, Mr. Smith cannot represent the trustee in pursuing these claims for the estate. In this case Ms. Rice's attorney-client privilege did not pass to the trustee; consequently he may not waive it. The trustee may not obtain Mr. Smith's files at this time; he is free to file a Bankruptcy Rule 7026(b)(3) motion for the purpose of obtaining any documents which he has requested in response to which Mr. Smith has asserted the work product doctrine. After asserting any attorney-client privilege as to documents Mr. Smith shall immediately provide the trustee with a privilege log in the form outlined by this court. This opinion constitutes the court's findings of fact and conclusions of law and pursuant to Fed. R. Bankr.P. 7052, they will not be separately stated.

---

15. *In re Grand Jury Investigation (United States v. Corporation)*, 974 F.2d 1068, 1071 (9th Cir.1992).