**In re Bruce D. MILLER and Jacqueline A. Miller, Debtors.**

**Bruce C. French, Trustee, Plaintiff,**

**v.**

**Bruce D. Miller, et al., Defendant.**

**Bankruptcy Nos. 98–3141, 97–34397.**

United States Bankruptcy Court, N.D. Ohio.

April 19, 2000.

---

Randy L. Reeves, Lima, OH, for Debtors.

Bruce C. French, Lima, OH, trustee.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Chapter 7 Trustee's Motion to Compel Discovery from the Debtors' former counsel. The Debtors have objected to this discovery request on the grounds that the information sought by the Trustee is protected from disclosure by the attorney-client privilege. On July 15, 1999, the Court held a Hearing on this matter at which time the Parties were afforded the opportunity to present arguments in support of their respective positions. In addition, the Trustee and the Debtors each submitted Memorandum to the Court detailing their particular legal arguments. This Court has now had the opportunity to review the arguments of the Parties, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Trustee's Motion to Compel Discovery should be Granted subject to the conditions contained in this Opinion.

### FACTS

On February 27, 1998, the Debtors, Bruce D. Miller and Jacqueline A. Miller (hereinafter Debtors), who were represented by legal counsel, filed for relief under Chapter 7 of the United States Bankruptcy Code. Not long thereafter, Bruce French, the acting Chapter 7 Trustee (hereinafter Trustee), examined the Debtors in accordance with 11 U.S.C. § 341(a). At this examination, the Trustee discovered that the Debtors had failed to disclose in their bankruptcy schedules a potential personal injury claim. The Debtors were therefore requested by the Trustee to amend their bankruptcy schedules to reflect this potential claim. In addition, the Debtors were advised that they were legally obligated to immediately turnover any monies that they received as a result of their personal injury claim to the Trustee. (Transcript of Debtors' 341 examination, pgs. 8–12).

On March 14, 1998, after the Debtors had received their bankruptcy discharge, the Debtor, Jacqueline Miller, received an insurance settlement on her personal injury claim in the amount of Nine Thousand Five Hundred Dollars ($9,500.00). It appears, however, that the Debtors, in con-

travention to the Trustee's directive, failed to turnover these funds, and instead spent the insurance proceeds on personal matters. As a consequence, the Trustee brought the above-captioned adversary complaint to revoke the Debtors' discharge on the basis that the Debtors, by failing to turnover the insurance proceeds, intended to defraud the Trustee. In addition, subsequent to the filing of the Trustee's Complaint, it was discovered that the Debtors had also failed to fully disclose all of their creditors in their bankruptcy petition, and therefore the Trustee filed an amended Complaint reflecting this omission as an additional ground to revoke the Debtors' bankruptcy discharge. The specific statutory grounds upon which the Trustee relies to revoke the Debtors' discharge are §§ 727(d)(1) & (2) of the Bankruptcy Code which provide, inter alia, that:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
>
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

Sometime thereafter, in order to gather the information necessary to prove the requirements of the above-stated Bankruptcy Code sections, the Trustee brought a Motion to compel discovery from the Debtors' former legal counsel, Athena Nyers.[1] The reason stated by the Trustee for requiring such information was to determine

if the Debtors' were "aware[ ] that it was unlawful to embark upon the cause upon which they set." (Trustee's Memorandum dated 7–7–99, pg. 2). Stated in more specific terms, the Trustee sought from the Debtors "the turnover of records and the release of information ... to aid in [the Trustee's] investigation of debtors' fraudulent concealment of assets and non-disclosure of property as well as conveyances to preferred creditors." (Trustee's Memorandum dated 7–2–99, pg. 2). In addition, the Trustee stated that if appropriate, the information obtained from his discovery request would be referred to the United States Attorney for possible criminal violations of the Bankruptcy Code. (Trustee's Memorandum dated 7–7–99, pg. 2).

The Debtors, however, through their present legal counsel have objected to the Trustee's discovery request on the grounds that the information the Trustee seeks is protected from disclosure by the attorney-client privilege. In response thereto, the Trustee raises two issues: First, the Trustee contends that the Debtors are not entitled to assert the attorney-client privilege because he, as the bankruptcy trustee, is actually the holder of the Debtors' attorney-client privilege. In the alternative, the Trustee asserts that even if he is not the holder of the Debtors' attorney-client privilege, the "crime-fraud" exception to the attorney-client privilege negates the Debtors' entitlement to claim the privilege. In support of this assertion, the Trustee points to Disciplinary Rules 4–101(C)(3) and (4), which permit attorneys to disclose confidences and secrets of a client in order to prevent a crime or to protect an attorney against allegations of wrongful conduct.

### DISCUSSION

Determinations concerning the administration of the debtor's estate, and objections to discharge are core proceed-

---

1. On January 25, 1999, this Court granted the request of Athena Nyers to withdrawal as the Debtors' attorney of record.

ings pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), and (b)(2)(J). Thus, this matter is a core proceeding.

■ In the instant adversary proceeding, the Debtors have invoked the "attorney-client privilege" to prevent their former attorney from giving evidence against them. Under Bankruptcy Rule 9017 and the Federal Rules of Evidence, privileges in federal courts, such as the attorney-client privilege, are governed with reference to the federal common law, unless the State law supplies the rule of decision.[2] *Moore v. Eason (In re Bazemore)*, 216 B.R. 1020, 1022–23 (Bankr.S.D.Ga.1998). In the instant case, since the Trustee seeks to revoke the Debtors' discharge pursuant to specific provisions contained under Title 11 of the United States Code, this Court will apply the federal common law regarding the attorney-client privilege.

As previously stated, two issues are raised by the Trustee concerning the applicability of the attorney-client privilege between the Debtors' and their former legal counsel; namely, whether the Trustee became the holder of the privilege upon the Debtors filing their bankruptcy petition, and second, whether the crime-fraud exception to the privilege exists. The Court begins its analysis with the former.

**2.** Rule 501 of the Federal Rules of Evidence provides that, "[e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

**3.** In *Weintraub* the Supreme Court specifically stated that, "our holding today has no

## TRUSTEE'S SUCCESSION TO THE ATTORNEY–CLIENT PRIVILEGE

■ Outside the context of a bankruptcy proceeding, it is clear that the attorney-client privilege belongs to the client alone. *Moore v. Eason (In re Bazemore)*, 216 B.R. 1020, 1023 (Bankr.S.D.Ga.1998). However, upon the filing of a bankruptcy petition, the relationship between an attorney and his client changes as the Bankruptcy Code provides for the appointment of a Trustee who succeeds to many of the interests of the debtor. *See Gresk v. Brown (In re Brown)*, 227 B.R. 875, 879 (Bankr.S.D.Ind.1998). Based upon this concept, many bankruptcy trustees have advanced the theory that they may, in fulfilling their duties under the Bankruptcy Code, unilaterally waive the debtor's attorney client-privilege.

■ In the context of a corporate debtor, the Supreme Court accepted this argument, holding that a bankruptcy trustee may, over the debtor's objection, waive the corporation's attorney-client privilege. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 356, 105 S.Ct. 1986, 1995, 85 L.Ed.2d 372 (1985). However, the Supreme Court was very careful not to extend its holding in *Weintraub* to that of an individual debtor.[3] As a consequence, outside the context of a corporate-

bearing on the problem of individual bankruptcy, which we have no reason to address in this case. As we have stated, a corporation, as an inanimate entity, must act through agents. When the corporation is solvent, the agent that controls the corporate attorney-client privilege is the corporation's management. Under our holding today, this power passes to the trustee because the trustee's functions are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors. An individual, in contrast, can act for himself; there is no 'management' that controls a solvent individual's attorney-client privilege. If control over that privilege passes to a trustee, it must be under some theory different from the one that we embrace in this case." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 356–57, 105 S.Ct. 1986, 1995, 85 L.Ed.2d 372 (1985).

debtor, there currently exists a split of authority as to whether the bankruptcy trustee can unilaterally waive a debtor's attorney-client privilege. At one end of the spectrum are cases like *In re Smith*, 24 B.R. 3, 4 (Bankr.S.D.Fla.1982), where the bankruptcy court held the bankruptcy trustee, as a matter of law, succeeded to the attorney-client privilege of an individual Chapter 7 debtor. By comparison, cases like *In re Tippy Togs of Miami, Inc.*, 237 B.R. 236, 239 (Bankr.S.D.Fla. 1999), and *In re Silvio De Lindegg Ocean Developments of America, Inc.*, 27 B.R. 28, 28 (Bankr.S.D.Fla.1982), have held that the attorney-client privilege cannot at all be waived by the trustee on behalf of the debtor. *See also McClarty v. Gudenau*, 166 B.R. 101, 101–02 (E.D.Mich.1994). In addition, a few federal courts have adopted a middle of the line approach, and have held that the particular circumstances of the case must be examined to determine if the bankruptcy trustee has the power to waive the debtor's attorney-client privilege over his objection. *Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1265–66 (10th Cir. 1999); *In re Rice*, 224 B.R. 464, 469 (Bankr.D.Or.1998); *Moore v. Eason (In re Bazemore)*, 216 B.R. 1020, 1022–24 (Bankr. S.D.Ga.1998).

■ Upon examining each of these approaches, this Court concludes that the latter approach, in which the individual circumstances of the case are considered, is the proper approach as the former two approaches, being absolute in nature, do not take into consideration the many varied situations that are involved in an individual Chapter 7 case. In addition, based upon the interplay between the following two tenets, a middle of the line approach seems to conform most closely with the provisions of the Bankruptcy Code.

First, in order to fulfill his duties under the Bankruptcy Code, the bankruptcy trustee is conferred with a large degree of power. Nevertheless, the trustee's powers, vis-a-vis the debtor, are not limitless. By way of illustration, the Bankruptcy Code confers absolutely no power upon the

trustee to make decisions concerning how a debtor manages his every day affairs such as where the debtor will live or work. *In re Hunt*, 153 B.R. 445, 453 (Bankr. N.D.Tex.1992). Instead, pursuant to §§ 323(a) and 541(a) of the Bankruptcy Code, the trustee's powers are limited to that of a representative of all the property that comes into a debtor's bankruptcy estate. In essence, the trustee's power in relationship to the debtor is limited to that of a transferee of all of the property included in the debtor's bankruptcy estate. *Id.* However, the concept of property of the estate, over which the trustee has control, connotes something with some sort of intrinsic value which may be bought, sold or levied upon by creditors. By comparison, a person's right to assert the attorney-client privilege does not constitute such an alienable commodity. Thus, merely because the trustee becomes the transferee of all (or most) of the debtor's assets does not thereby denote that the trustee is also the recipient of the debtor's attorney-client privilege. Stated in another way, the mere transfer of assets does not also entail the transfer of the individual's attorney-client privilege as well. *See* William R. Mitchelson, Jr., *Waiver of the Attorney–Client Privilege by the Bankruptcy Trustee*, 51 U.Chi.L.Rev. 1230, 1259 (1984). The Court notes that to hold otherwise could lead to absurd results. For example, if a Trustee did absolutely succeed to a debtor's attorney-client privilege, then a trustee could theoretically inquire into all the prepetition communications the debtor ever made with an attorney, regardless of whether such matters had anything to do with the related bankruptcy proceeding. Consequently, based upon the foregoing reasons, conferring an absolute right upon the bankruptcy trustee to waive a debtor's attorney-client privilege does not appear to comport with the overall structure of the Bankruptcy Code.

At the same time, if the trustee were entirely precluded from obtaining information held in confidence by the debtor's attorney, the trustee's ability to perform his duties under the Bankruptcy Code

could, in many cases, be severely hampered. Therefore, in order to assist the trustee in discharging his statutorily prescribed duties,[4] the Bankruptcy Code creates a statutory scheme by which the trustee can readily obtain needed information. For example, the Bankruptcy Code imposes upon a debtor the duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under th[e Bankruptcy Code.]" 11 U.S.C. § 521(3). Furthermore, such duties may even include surrendering to the trustee "any recorded information, including books, documents, records, and papers, relating to property of the estate." 11 U.S.C. § 521(4); *see In re Kaufman*, 35 B.R. 26, 28 (Bankr.D.Hawai'i 1983) (debtor cannot rely on the Fifth Amendment to avoid turning over to trustee the documents, records and assets belonging to the estate). Therefore, based upon these statutorily imposed obligations, it seems apparent that Congress envisioned a scheme whereby the attorney-client privilege, which is simply a judicially created doctrine, would give way, in appropriate situations, to the needs of the bankruptcy trustee to carry through with his duties under the Bankruptcy Code.

■ One of the leading cases adopting this view is *Moore v. Eason (In re Bazemore)*, where the bankruptcy court applied a balancing test to determine if a trustee was entitled to succeed to the debtor's attorney-client privilege. 216 B.R. 1020, 1023–24 (Bankr.S.D.Ga.1998). Such an approach seems both practical and pragmatic. In determining which factors to balance, the court in *In re Bazemore* observed that the courts which have found that the trustee could not waive a debtor's attorney-client privilege, generally "focus on [the] personal harm to or control over the debtor and the impeding of the attorney-client communication." *Id.* at 1024 *citing In re Silvio*, 27 B.R. 28 (Bankr.S.D.Fla.1982); *In re Hunt*, 153 B.R. 445 (Bankr.N.D.Tex.1992). On the other hand, the court in *In re Bazemore*

found that the courts reaching the opposite conclusion generally "focus on the lack of an adverse effect" the waiving of the attorney-client privilege will have on the debtor. *Id. citing In re Williams*, 152 B.R. 123 (Bankr.N.D.Tex.1992); *In re Fairbanks*, 135 B.R. 717 (Bankr.D.N.H. 1991); *In re Smith*, 24 B.R. 3 (Bankr. S.D.Fla.1982). Accordingly, in conducting its balancing test, the bankruptcy court in *In re Bazemore* concluded that:

> The inquiry [of whether a trustee can waive the attorney client-privilege] requires balancing the interests of a full and frank discussion in the attorney-client relationship and the harm to the debtor upon a disclosure with the trustee's duty to maximize the value of the debtor's estate and represent the interests of the estate.

216 B.R. at 1023–24 *citing Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

■ Upon applying these principles to the case sub judice, the Court is not persuaded that the Trustee should be entitled to succeed to the Debtors' attorney-client privilege, and thereby unilaterally waive the privilege. Of significance in this decision is the fact that the Trustee and the Debtors are in an adversarial relationship. *See In re Rice*, 224 B.R. 464, 471 (Bankr. D.Or.1998). As a consequence, the Trustee's assumption of the Debtor's attorney-client privilege could potentially cause the Debtors a great deal of harm, as the Trustee's sole purpose for seeking to waive the Debtors' attorney-client privilege is to use that information directly against them. (i.e., to revoke the Debtors' bankruptcy discharge). Furthermore, when one also considers that such information could potentially be used against the Debtors if they are ultimately prosecuted for criminal violations of the Bankruptcy Code, the potential for harm against the Debtors becomes particularly acute. In addition, and by comparison, the impairment upon the Trustee's ability to represent the estate

---

**4.** 11 U.S.C. § 704 provides a list of the trustee's statutorily prescribed duties.

and maximize the value therefrom, will not, relatively speaking, be significantly hampered by this decision. For example, the assets of the Debtors' bankruptcy estate will not necessarily be increased if the Trustee is ultimately successful in his complaint to revoke the Debtors' discharge.

## CRIME–FRAUD EXCEPTION TO THE ATTORNEY–CLIENT PRIVILEGE

█ The right of a party to assert the attorney-client privilege is not absolute. *Fausek v. White,* 965 F.2d 126, 129 (6th Cir.1992). Hence, merely because the Trustee cannot himself waive the Debtors' attorney-client privilege, does not mean that the Debtors are automatically entitled to claim the privilege. In this regard, the Trustee asserts that the "crime-fraud" exception to the attorney-client privilege should operate to abrogate the Debtors' right to claim the privilege.

█ The crime-fraud exception to the attorney-client privilege holds that communications made between an attorney and his client, for the purpose of furthering the commission of a future or present crime or fraud, are not protected from disclosure by the attorney-client privilege. The purpose of this exception is to assure "that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin,* 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989).

█ In order to invoke the crime-fraud exception, the Sixth Circuit Court of Appeals has articulated a two-part test: First, to defeat the privilege, the movant must make a prima facie showing that a sufficiently serious crime or fraud occurred, and second, the movant must establish some relationship between the communication at issue and the prima facie

violation. *United States v. Collis,* 128 F.3d 313, 320 (6th Cir.1997) *citing In re Antitrust Grand Jury,* 805 F.2d 155, 164 (6th Cir.1986). In addition, for a movant to satisfy his prima facie showing, the Sixth Circuit went on to state that the evidence presented by the movant must be such that a prudent person would have a reasonable basis to suspect the perpetration of a crime or fraud. *Id.*

█ In the instant case, the Trustee alleges that the Debtors, by failing to turnover to the Trustee the proceeds they received from an insurance settlement, and by also failing to list all of their creditors in their bankruptcy petition, intentionally perpetrated a fraud upon the Trustee and this Court.[5] In support of this assertion, the Trustee has proffered to the Court the testimony of the Debtors in which they acknowledge their transgressions. In response to these allegations, however, the Debtors assert that even though they did, in fact, commit such infractions, they nevertheless acted without any culpable intent. Such an assertion, of course, if proven, might operate as a valid defense against the Trustee's complaint to revoke the Debtors' bankruptcy discharge. Notwithstanding, such a defense is simply insufficient to defeat the Trustee's prima facie showing that a serious crime/fraud occurred given that, (1) there is no doubt that the Debtors acted in contravention to the Bankruptcy Code, and (2) the Court considers the Trustee's allegations of fraudulent intent, if true, to constitute a very serious violation of the Bankruptcy Code.

█ With respect to the second element of the Sixth Circuit's crime/fraud test, however, the Court is unable, without knowing exactly what communications would be revealed by the Debtors' former counsel, to conclude that the Trustee has met his burden. In this regard, the Court recognizes that this holding can create a

---

5. The Trustee also asserts that Disciplinary Rules 4–101(C)(3) and (4) would permit the disclosure of such information. However, the attorney-client privilege exists apart from, and is not coextensive with, the ethical confidentiality precepts. *United States v. Ballard,* 779 F.2d 287, 293 (5th Cir.1986)

paradox in that such a communication cannot actually be known until the attorney-client privilege is lifted. (This is sometimes referred to as the circular proof problem).[6] However, such a predicament standing alone, does not automatically foreclose the application of the crime-fraud exception to the attorney-client privilege. In *United States v. Zolin*, the Supreme Court of the United States held that a court may, in its discretion,[7] conduct an in camera review to determine the applicability of the crime-fraud exception. 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989). In *Zolin*, however, the Supreme Court cautioned that a blanket rule of permitting in camera reviews to determine the applicability of the crime-fraud exception could lead to abuses as well as due process concerns. *Id.* at 571, 109 S.Ct. at 2630. Therefore, before engaging in an in camera review to determine the applicability of the crime-fraud exception, *Zolin* states that a court must "require a showing of a factual basis adequate to support a good faith belief by a reasonable person that an in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* at 572, 109 S.Ct. at 2631 citing *Caldwell v. District Court*, 644 P.2d 26, 33 (Colo.1982). In articulating this requirement, the Supreme Court explained that this evidentiary standard is less than what is ultimately needed to overcome the attorney-client privilege given, that an "in camera inspection is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure." *Id.* at 572, 109 S.Ct. at 2630–31.

In applying the *Zolin* standard to the instant case, the Court finds that sufficient evidence exists to conclude that a reasonable person could form a good faith belief that some relationship exists between the communications sought by the Trustee and the violations allegedly at issue. Specifically, it seems very reasonable that the communications made between the Debtors and their former attorney could shed light on the Debtors' state of mind concerning their alleged violations of the United States Bankruptcy Code. Therefore, this Court will conduct an in camera review concerning the communications made between the Debtors and their former legal counsel to determine if the second requirement of the crime-fraud exception, as set forth by the Sixth Circuit Court of Appeals in *United States v. Collis*, 128 F.3d 313 (6th Cir.1997), has been met.[8] Procedurally, this Decision will be implemented as follows:

Within Twenty-one (21) days of the entry of this Order, the Trustee will submit to the Court a list of questions that he wishes to be proffered to the Debtors' former attorney, Athena Nyers. Thereafter, the Debtors will have fourteen (14) days to interject any objections thereto,[9] after which time the Court, upon considering the Debtors' objection, will schedule a time to conduct an in camera review of

**6.** *See* Christopher P. Galanek, *The Impact of the Zolin Decision on the Crime–Fraud Exception to the Attorney–Client Privilege*, 24 GA. L.REV. 1115, 1124 (1990).

**7.** In using its discretion the Supreme Court in *Zolin* stated that, "[t]he court should make [such a] decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *United States v. Zolin*, 491 U.S. 554,

572, 109 S.Ct. 2619, 2631, 105 L.Ed.2d 469 (1989).

**8.** In *Zolin* and some of its progeny, it is suggested that a court should only conduct an in camera review upon the request of the party seeking to invoke the crime-fraud exception to the attorney-client privilege. In this case, however, the Court, in the interest of concluding the Parties' dispute and pursuant to its powers under 11 U.S.C. § 105(a), is conducting such an in camera review upon its own motion.

**9.** Naturally, objections related to the application and/or the existence of the attorney-client privilege will not be entertained.

Athena Nyers. At this in camera review, the Court, outside the presence of counsel, will propound the questions it deems appropriate to Athena Nyers in order to determine, on a question-by-question basis, whether the responses elicited from such questions fall within the purview of the crime-fraud exception to the attorney-client privilege.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Trustee, Bruce C. French, submit to the Court, within Twenty-one (21) days of the entry of this order, the questions specified in this Opinion.

It is **FURTHER ORDERED** that the Debtors, Bruce D. Miller and Jacqueline A. Miller, have Fourteen (14) days, commencing from the date that the Trustee submits his list of proposed questions, to interject any objections thereto.

It is **FURTHER ORDERED** that the Clerk, U.S. Bankruptcy Court, serve a copy of this Order upon the Debtors, Attorney for Debtors, Trustee, and the Debtors' former legal counsel, Athena Nyers.