**In re Fred H. BAME, Debtor.**

**James E. Ramette, Trustee, Plaintiff,**

**v.**

**Fred H. Bame, Defendant.**

**Bankruptcy No. 99–40683.**
**Adversary No. 99–4278.**

United States Bankruptcy Court,
D. Minnesota.

July 27, 2000.

**370**

---

*MEMORANDUM ORDER*

NANCY C. DREHER, Bankruptcy Judge.

The above entitled matter came on for hearing on April 26, 2000, on the motion of the Plaintiff, Trustee James E. Ramette ("Trustee") to compel discovery. Randall Seaver appeared for the Trustee; Thomas Miller and Peter Thompson represented the Debtor. The motion relates to two subpoenas issued by the Trustee to law firms regarding their representation of Debtor/Defendant Fred Bame ("Debtor"). This order will address only the motion as it relates to the law firm of Kennedy & Graven. The remaining issues will be addressed in a separate order. Based upon the record before the court and the briefs and arguments of counsel, the court makes the following findings and conclusions.

The Debtor's bankruptcy case was commenced on February 10, 1999, on the filing of an involuntary Chapter 7 petition. On February 16, 1999, the Debtor voluntarily converted the case to one under Chapter 11. Upon the entry of the order for relief, Debtor became a Debtor–in–Possession ("DIP"). 11 U.S.C. § 1106(a) and 1107. The Debtor, as the DIP, subsequently employed the law firm of Kennedy & Graven to represent the DIP in the bankruptcy proceedings. The court entered an order approving such employment on March 1, 1999. It appears, from a review of subsequently filed fee applications, that Kennedy & Graven aided the Debtor in preparing the bankruptcy schedules, statement of financial affairs, and various other documents related to the bankruptcy proceedings. Kennedy & Graven has filed an application for payment of administrative expenses for services rendered to the DIP. Such application seeks reimbursement from the estate in the amount of $40,-369.39.

On May 19, 1999, the Debtor's case was converted, over the Debtor's objection and at the urging of virtually all his creditors, back to a Chapter 7 proceeding. The Trustee was appointed to serve as the trustee of the Debtor's case. In the course of administering the estate, the Trustee discovered what he believed to be numerous inconsistencies, errors, and omissions in the Debtor's schedules. In addition, the Trustee discovered that the Debtor had transferred significant assets with what the Trustee believed to be an intent to hinder, delay, or defraud Debtor's creditors. For these and other reasons, the Trustee filed a complaint commencing the present adversary proceeding, which seeks to deny the Debtor his discharge and to recover property of the estate. In response, the Debtor signed a confession of judgment. Based upon the confession of judgment and the agreement of the parties, the court entered judgment on September 27, 1999, denying the Debtor his discharge. The issue of the Trustee's right to a money judgment was reserved pending further discovery.

As part of the discovery in this proceeding, the Trustee issued two subpoenas, which are the subject of the present mo-

tion. The subpoena addressed in this order was served upon the law firm of Kennedy & Graven. It required the firm to appear for a deposition and sought:

> Any and all documents constituting, evidencing, or relating to all files and documents prepared, maintained, or received by [the firm] in connection with the Fred H. Bame Chapter 11 bankruptcy case from February 16, 1999 through May 18, 1999. This request includes, but is not limited to, all attorney notes, memoranda, billing records and correspondence to or from anyone including, without limitation, Fred H. Bame.

Importantly, all the information sought by the subpoena related to the firm's work with the Debtor during the period he acted as DIP. The Trustee has made abundantly clear that he is not seeking to inquire into communications of any sort that occurred prior to the date Debtor voluntarily converted his case to a Chapter 11 or after the case was reconverted to a Chapter 7.

Kennedy & Graven responded that the firm would assert the attorney-client privilege on behalf of the Debtor. Specifically, the firm stated in a letter to the Trustee, "You thus should expect that, if required to appear at the deposition, Kennedy &

Graven is not in a position to do anything other than to assert the attorney-client privilege and work product doctrine and will not produce any documents."[1] The Trustee replied that he was the holder of the privilege and would waive it. The Debtor countered that the privilege did not shift to the Trustee upon conversion because he was an individual debtor, rather than a corporate debtor. He further contended that the subpoena violated his Fifth Amendment privilege against self-incrimination.[2]

The matter, however, is not so black and white as the parties would have it be. As set forth below, as to some questions and with respect to some documents, the Trustee will hold the attorney-client privilege and will be free to waive it; as to others, the privilege may belong to the Debtor. The Fifth Amendment does not apply to testimony by attorneys at Kennedy & Graven, but it may protect some documents from production. This opinion will provide guidance to the parties regarding the further conduct of discovery.

### A. Attorney–Client Privilege

▮ A trustee in bankruptcy has statutory authority to require turnover of rec-

---

1. Although Kennedy & Graven initially asserted the work product doctrine, such issue has not been argued or briefed to this court. In any event, because the Debtor has already been denied his discharge, the Trustee is only seeking information with respect to undisclosed assets and transfers. Accordingly, the Trustee is no longer technically an adverse party to the Debtor.

2. The Debtor also suggests that the Trustee must prove that the information sought from the Debtor's attorney was not otherwise available. *See Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986) (requiring that a party seeking to take the deposition of opposing counsel show that (1) no other means exist to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information is crucial in preparation of the case). However, *Shelton* involved a situation where one party sought to depose counsel representing an adverse party in the on-going litigation. The court placed strict limitations on such a discovery

device. The policy underlying the *Shelton* decision is not present in this case. Kennedy & Graven is not representing the Debtor in the on-going litigation with the Trustee. Moreover, because the Debtor has already been denied his discharge, he is no longer an adverse party to the Trustee. The Trustee is only seeking information, of which Kennedy & Graven has first hand knowledge as a fact witness, that will enhance the value of the estate. Therefore, there is no need to meet the three part test set forth in *Shelton.* However, even if the *Shelton* test applies, the Trustee has met his burden. First, the information sought by the Trustee is of a nature that it would only be available through Kennedy & Graven or the Debtor. Because the Debtor has asserted his Fifth Amendment privilege with respect to all requests for information, the information is not otherwise available. Second, to the extent described in more detail below, the information is not privileged. Third, such information is crucial to the administration of the estate.

ords held by former attorneys, but such authority is specifically made "subject to any applicable privilege." 11 U.S.C. § 542(e). Federal Rule of Evidence 501, applicable in bankruptcy courts, provides that, except where state law provides the governing rule in civil proceedings, federal common law governs the assertion of evidentiary privileges. Fed.R.Evid. 501. Thus, federal common law governs control of a debtor's privileges. *Foster v. Hill (In re Foster )*, 188 F.3d 1259, 1264 (10th Cir. 1999); *French v. Miller (In re Miller)*, 247 B.R. 704, 708 (Bankr.N.D.Ohio 2000); *Moore v. Eason (In re Bazemore )*, 216 B.R. 1020, 1022–23 (Bankr.S.D.Ga.1998).

■ The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. *In re Hunt*, 153 B.R. 445, 450 (Bankr. N.D.Tex.1992) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). The privilege "encourages full and frank communication between attorneys and their clients and thereby promotes broader public interests in the observance of law and administration of justice." *Hunt*, 153 B.R. at 450 (quoting *Upjohn*, 449 U.S. at 389, 101 S.Ct. 677). The party claiming the privilege must establish its applicability. *Foster*, 188 F.3d at 1264 (citing *Doe v. United States (In re Grand Jury Subpoenas)*, 144 F.3d 653, 658 (10th Cir.1998)). Moreover, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact finding function, they are not favored, and, where recognized, must be narrowly construed. *Id.*; *Whyte v. Williams*, 152 B.R. 123, 127 (Bankr.N.D.Tex.1992).

■ In general, blanket assertions of the attorney-client privilege are disfavored. *Foster*, 188 F.3d at 1264; *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.1992). The privilege must ordinarily be raised as to each item sought or question asked in order to allow the court to rule with specificity. *Clarke*, 974 F.2d at 129. In this case Kennedy &

Graven asserted that if required to appear at the deposition, it could do nothing other than to assert the attorney-client privilege. Ordinarily, such an assertion would be insufficient. However, the Trustee's motion actually raises the issue of who holds the right to waive or assert the privilege if it actually applies to any particular question or document. Accordingly, I will address that issue but will not and cannot at this point decide the propriety of any later assertion of the attorney-client privilege as to a particular question or document.

■ Outside of bankruptcy, the attorney-client privilege belongs solely to the client. *Miller*, 247 B.R. at 708; *Bazemore*, 216 B.R. at 1023; *Hunt*, 153 B.R. at 450. However, in *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), a unanimous Supreme Court held that "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications." *Id.* at 358, 105 S.Ct. 1986. The Court, relying upon *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), reasoned that bankruptcy problems should be analyzed by the same principles that would govern analogous nonbankruptcy situations. Accordingly, it held that "because the attorney-client privilege is controlled, outside of bankruptcy, by a corporation's management, the actor whose duties most resemble those of management should control the privilege in bankruptcy, unless such a result interferes with policies underlying the bankruptcy laws." *Weintraub*, 471 U.S. at 351–52, 105 S.Ct. 1986. The court concluded that, because the trustee receives wide-ranging management authority over the debtor, the trustee is the "actor whose duties most closely resemble those of management." *Weintraub*, 471 U.S. at 354, 105 S.Ct. 1986. Because such result did not interfere with the policies underlying the bankruptcy laws, and because of the policy considerations raised if corporate managers were

allowed to use the attorney-client privilege as a shield to protect themselves from answering for their own wrongful acts, the Court gave the bankruptcy trustee the power to waive a corporate debtor's attorney-client privilege. *Id.; see also Citibank, N.A. v. Andros,* 666 F.2d 1192 (8th Cir.1981) (a pre-Weintraub decision reaching the same result and using a similar analysis as *Weintraub*).

The Supreme Court's decision in *Weintraub,* however, does not address the fact situation presented by the Trustee's motion. Unlike *Weintraub,* the information sought by the Trustee relates to postpetition communications between a DIP and its bankruptcy counsel. Because at all relevant times this was a Chapter 11 proceeding, the Debtor was acting as the DIP when such advice was given. I have found no cases discussing the question of who holds, and can thus waive, the attorney-client privilege as to postpetition communications, either in the case of a corporate DIP or in the case of an individual DIP, once the case is converted to a Chapter 7. This appears to be a case of first impression. *See* Hon. Barry Russell, *Bankruptcy Evidence Manual* § 501.10, at 578 (1999) (finding no reported cases on this issue).

 Because there are no reported cases on this issue, I must begin with the framework established by the Supreme Court. If this case involved corporate DIP, the Supreme Court's analysis in *Weintraub* would almost directly apply. A corporate DIP, just like a solvent corporation outside of bankruptcy, is an inanimate entity that must act through agents. While the corporation remains in possession, its management controls the attorney-client privilege. *Williams,* 152 B.R. at 127. When a case is converted and a trustee is appointed, the trustee's functions are not only analogous but nearly identical to the former corporate DIP. Thus, just as in *Weintraub,* the trustee becomes the agent in control of the attorney-client privilege. *See Weintraub,* 471

U.S. at 356, 105 S.Ct. 1986; *Williams,* 152 B.R. at 127–28.

The analysis becomes more difficult, however, in this case because the Debtor is an individual, and individuals are not required to act through agents. Again, I must begin with the *Weintraub* analysis, which requires that the court analyze the situation according the principles that would govern analogous nonbankruptcy situations. *Weintraub,* 471 U.S. at 351, 105 S.Ct. 1986 (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

 Upon commencement of a bankruptcy case, all the debtor's property passes to the estate. 11 U.S.C. § 541. The DIP is a fiduciary for the bankruptcy estate and assumes virtually all of the rights and responsibilities of a bankruptcy trustee. 11 U.S.C. § 1107; *Wolf v. Weinstein,* 372 U.S. 633, 649–50, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963); *Williams,* 152 B.R. at 127. The Supreme Court has described this concept as a "receivership without a receiver." *Wolf,* 372 U.S. at 649, 83 S.Ct. 969. Thus, while the exact scope of a DIP's fiduciary duties is subject to some debate, it is clear that a DIP has a duty to creditors of the estate not to waste the estate's assets. Jeffrey C. Krause, *Whose Lawyer Are You: Fiduciary Obligations of Debtor and Debtor–in–Possession and Counsel,* 31 Beverly Hills B.A. J. 37, 39 (1997); *see also Wolf,* 372 U.S. at 649–50, 83 S.Ct. 969; *Williams,* 152 B.R. at 128. In this case, the Trustee subsequently assumed the role as the trustee for the estate when the case was converted back to Chapter 7.

 The most analogous nonbankruptcy situation to the circumstances presented in this case is when an individual transfers all of his assets into a trust, names a trustee, and then, subsequently, a successor trustee is named. In general, a successor trustee has the same powers and duties as the original trustee. 3 William F. Fratcher, *Scott on Trusts* § 196 (4th

ed.1988). Thus, in the nonbankruptcy context, when a successor trustee takes office, he assumes all powers of the original trustee, including the power to assert the attorney-client privilege with respect to confidential communications between the original trustee and an attorney on matters of trust administration. *Moeller v. Superior Court,* 16 Cal.4th 1124, 69 Cal. Rptr.2d 317, 947 P.2d 279, 283 (1997). Therefore, according to the analysis required by *Weintraub,* the Trustee in this case, as the trustee for the bankruptcy estate, succeeded to the DIP's power to assert or waive the attorney-client privilege with respect to matters involving the administration of the estate.

■■■ Moreover, the fact that the information sought relates to postpetition advice is important because Kennedy & Graven's role, at least on its face, was solely to serve as attorney for the DIP. The attorney for the DIP may only represent the individual interests of the debtor in a very few limited instances, such as in proposing a plan. *In re Tomaiolo,* 205 B.R. 10, 16 (Bankr.D.Mass.1997).[3] In all other instances, the attorney for the DIP represents the estate's interests. *Id.* Essentially, the estate was Kennedy & Graven's client, not the Debtor. This role as attorney for the estate is confirmed by the fact that Kennedy & Graven has sought payment of $40,369.39 from the assets of the estate for its work as attorney for the DIP and from the detailed fee application that it filed indicating work typically involved in representing a Chapter 11 DIP.

This situation is similar to trustees and other fiduciaries who seek legal advice in non-bankruptcy contexts. It is commonly understood that a trustee cannot assert the attorney-client privilege individually with respect to advice concerning trust administration because the trustee is representing the beneficiaries of the trust and he is, therefore, not the real client. *United States v. Evans,* 796 F.2d 264, 265–66 (9th Cir.1986); *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970); *Petz v. Ethan Allen, Inc.,* 113 F.R.D. 494, 497 (D.Conn.1985); *United States v. DeLillo,* 448 F.Supp. 840, 841 (E.D.N.Y.1978). As in the non-bankruptcy fiduciary context, the DIP in this case was not acting individually but as an entity representing the interests of the estate. Thus, it would be anomalous to deny the estate access to the legal advice sought on its behalf. Accordingly, as to communications regarding administration of the estate, the estate, as Kennedy & Graven's true client, is the only party that can waive the privilege. Because the Trustee is now the representative of the estate, he controls that decision.

As addressed in *Weintraub,* this result does not have chilling effects on the attorney-client privilege because a trustee always runs the risk that a successor trustee or beneficiary will waive the privilege, regardless of the filing of a bankruptcy petition. *See Weintraub,* 471 U.S. at 357, 105 S.Ct. 1986; *Moeller,* 69 Cal.Rptr.2d 317, 947 P.2d at 285 (finding that the result is not unfair in light of the nature of a trust and the trustee's fiduciary duties).

A close, but not precise, case on point is *Whyte v. Williams (In re Williams),* 152 B.R. 123 (Bankr.N.D.Tex.1992). Even though *Williams* dealt with pre-petition communications, this case properly understood the fundamental importance of a DIP's position in bankruptcy. It recognized that, although there are differences between a corporate and an individual DIP:

> the individual debtor who becomes an individual debtor in possession nevertheless obtains the fiduciary responsibility

---

**3.** At least initially, it appears that most, if not all, of the advice was or should have been given to the DIP, not the Debtor individually. It is important to note, however, that to the extent any of the advice was given to the Debtor as an individual rather than as the DIP, there may be a privilege attached that belongs to the Debtor individually, and not to the DIP. This possibility is discussed in detail below.

of any debtor in possession. Like· the corporation which becomes a debtor in possession upon the bankruptcy filing, an individual debtor in possession becomes a fiduciary to the estate with rights and duties different than a prebankruptcy individual.... Accordingly, an individual debtor in possession must exercise control over the individual's attorney/client and accountant/client privileges consistent with his fiduciary responsibility.

*Williams,* 152 B.R. at 128. When a trustee was subsequently appointed, the *Williams* court held that the trustee succeeded to the debtor-in-possession's fiduciary responsibilities. *Id.* at 129. The trustee, therefore, also succeeded to control over the attorney-client privilege. *Id.*

I see no reason why the same analysis would not apply to postpetition communications between the DIP and its attorney. The Debtor argues that the present matter is distinguishable from *Williams* because the trustee in *Williams* was not adverse to the debtor. However, just as in this case, the trustee in *Williams* was seeking to discover information about undisclosed assets and transfers. Moreover, just as in *Williams,* this case no longer involves the denial of the Debtor's discharge. Thus, any adversity between the Debtor and the Trustee is inherent in the nature of the proceedings. Such adversity, including the threat of criminal prosecution, was present in *Williams* as it is in this case. Accordingly, such adversity does not distinguish the two cases.[4]

Accordingly, I .find that the attorney-client privilege has passed to the Trustee with respect to,. communications between Kennedy & Graven and the Debtor during the period that the Debtor served as the DIP as. to all matters having to do with administration of the estate, including, in particular, disclosure and recovery of assets. It is, therefore, the Trustee's privilege to waive or assert as to questions regarding such representation of Debtor as an individual in Chapter 11 serving as a Debtor–in–Possession.

 If, however, Kennedy & Graven actually provided advice to Debtor as an individual, and not as a Debtor–in–Possession, the answer may be different. As stated above, the DIP is an entity distinct from the Debtor and is a fiduciary of the estate. Because the issue raised by the Trustee's motion relates to the DIP's and the estate's attorney-client privilege, the status of the Debtor as an individual is not relevant. This is not true, however, if and to the extent Kennedy & Graven provided advice to Debtor as an individual. It is clear that under certain circumstances it is perfectly acceptable for the attorney for the DIP to represent the Debtor individually. The Bankruptcy Code imposes certain responsibilities on the debtor, while others are placed on the DIP. Krause, *supra,* at 40. Thus, where the debtor is acting as the debtor rather than the DIP, such as in proposing a plan of reorganization, the attorney-client privilege belongs to the debtor individually, not to the estate. *See Tomaiolo,* 205 B.R. at 16 & n. 1; Krause, *supra,* at 41.[5] Indeed, the same

---

**4.** The *Williams* case notes that it did not involve the debtor's Fifth Amendment privilege. The Debtor's claim to a Fifth Amendment privilege in this case will be addressed below.

**5.** It is the Debtor's burden to prove that he was advised individually, rather than in a representative capacity as the DIP. *Doe v. United States* (*In re Grand Jury Subpoenas*), 144 F.3d 653, 658–59 (10th· Cir.1998). To do so the Debtor must meet the following test: (1) the Debtor must show that he approached Kennedy & Graven for the purpose of seeking legal advice; (2) he must demonstrate that

when he approached Kennedy & Graven, he made it clear he was seeking legal advice in his individual rather than representative capacity; (3) he must demonstrate that Kennedy & Graven saw fit to communicate with him in his individual capacity, knowing that a possible conflict could arise; (4) he must prove that his conversations with Kennedy & Graven were confidential; and (5) he must show that the substance of his conversations with Kennedy & Graven did not concern matters involving administration of the estate. *Id.*

may be true even if such individual advice was beyond the scope of Kennedy & Graven's retention and even if the estate paid for such services.[6]

Whether an individual debtor's attorney-client privilege transfers to the trustee is the precise issue left open by *Weintraub*. The court in *Weintraub* was clear not to include individual debtors in its analysis:

[O]ur holding today has no bearing on the problem of individual bankruptcy, which we have no reason to address in this case. As we have stated, a corporation, as an inanimate entity, must act through agents. When the corporation is solvent, the agent that controls the corporate attorney-client privilege is the corporation's management. Under our holding today, the power passes to the trustee because the trustee's functions are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors. An individual, in contrast, can act for himself; there is no "management" that controls a solvent individual's attorney-client privilege. If control over that privilege passes to a trustee, it must be under some theory different from the one that we embrace in this case.

*Weintraub*, 471 U.S. at 356–57, 105 S.Ct. 1986.

Since *Weintraub*, several courts have addressed the status of the attorney-client privilege as to prepetition communications between an individual debtor and such individual debtor's attorneys. The cases appear to fall into three categories.

On one end of the spectrum are those which, unable to find some "other theory" upon which to hold that the privilege transfers to the trustee, appear to hold that *per se* an individual's attorney-client privilege as to prepetition communications never passes to the trustee. *See, e.g.,*

*Hunt,* 153 B.R. at 451–52; *In re Silvio De Lindegg Ocean Dev. of America, Inc.,* 27 B.R. 28, 28 (Bankr.S.D.Fla.1982); *In re Tippy Togs of Miami, Inc.,* 237 B.R. 236, 239 (Bankr.S.D.Fla.1999) (with little analysis). These courts, using the *Weintraub* and *Butner* analysis, find that the most appropriate analogy to an individual debtor and the trustee is an individual and the purchaser of that individual's assets. *Hunt,* 153 B.R. at 453. The *Hunt* court noted:

The trustee of an individual debtor assumes control over most of the assets of that individual, just as he does in the case of a corporate debtor. The trustee, however, does not control the individual himself; he cannot force the debtor to do anything the individual debtor does not wish to do. The trustee, in effect, has no more control over the activities of an individual debtor than does a person who has purchased all of that person's assets: he is only given the power to control the use of the assets. The mere transfer of assets from one person to another does not entail the transfer of the individual's attorney-client privilege as well.

*Hunt,* 153 B.R. at 453 (quoting William R. Mitchelson, Jr., *Waiver of the Attorney–Client Privilege by the Trustee in Bankruptcy,* 51 U. Chi. L.Rev. 1230, 1259 (1984)). Thus, using this analysis, the individual debtor's attorney-client privilege does not transfer to the trustee.

At the other end of the spectrum are the few cases which hold that *per se* an individual's attorney-client privileged communications always transfer to the trustee. *In re Foster,* 217 B.R. 631 (Bankr.D.Colo. 1997), *overruled,* 188 F.3d 1259 (10th Cir. 1999); *In re Smith,* 24 B.R. 3 (Bankr. S.D.Fla.1982).

---

**6.** The existence of an attorney-client relationship and privilege is not dependent on the client himself paying the attorney. The relationship and the privilege may exist even though the attorney's fees are paid by a third party. *Dole v. Milonas,* 889 F.2d 885, 888 n. 5 (9th Cir.1989); *United States v. Edwards,* 39 F.Supp.2d 716, 722 (M.D.La.1999).

A third and more common analysis is that an individual debtor's attorney-client privilege as to prepetition communications does transfer to the trustee under certain circumstances, i.e., when on balance the trustee's duties to maximize the value of the estate outweigh the policies underlying the attorney-client privilege and the harm to the debtor of disclosure. *Foster,* 188 F.3d at 1265; *Bazemore,* 216 B.R. at 1024; *Williams,* 152 B.R. at 129–30; *see also Miller,* 247 B.R. at 709 (applying the balancing approach, but concluding that the privilege should not transfer to the trustee under the facts of the case).[7]

The Eighth Circuit has not ruled on this precise issue.[8] However, a non-bankruptcy case suggests that the court would align with the cases adopting a balancing approach. *See Pritchard–Keang Nam Corp. v. Jaworski,* 751 F.2d 277, 284 (8th Cir. 1984). In that case the court noted, "[d]ecisions regarding the attorney-client privilege should not be based on a rigid analysis. Rather, the focus is on whether the detriment to justice from foreclosing inquiry into pertinent facts is outweighed by the benefits to justice from a franker disclosure in the lawyer's office." *Id.* The only Circuit Court to address the issue has adopted such a balancing approach. *Foster v. Hill (In re Foster),* 188 F.3d 1259, 1268 (10th Cir.1999).

Based upon this Eighth Circuit precedent, the weight of the developing case law, and the foregoing analysis of the issue, I find the balancing approach to be the applicable test.

In this case the Debtor has already been denied his discharge, and the Trustee is only seeking to uncover assets and avoidable transfers that may benefit the estate. Thus, while if successful the trustee may recover assets from third party transferees, as to these activities there is no apparent and demonstrable harm to the Debtor. *See Williams,* 152 B.R. at 129–30. In fact, by waiving the privilege, the Trustee may benefit the estate by the recovery of assets, thus indirectly benefitting the Debtor by providing assets with which to pay his nondischargeable debts to his creditors. Therefore, as to most questions the Trustee could ask of counsel, the answer could not place the Debtor and the Trustee in a position adverse to each other and the balance would likely tip in favor of disclosure. As to other questions, however, especially those going to activities giving rise to potential criminal prosecution, the balance would probably tip in favor of sustaining assertion of the privilege, in which case the trustee would have the opportunity to raise the crime-fraud exception to the privilege.[9] As the Tenth Circuit has warned, however, such judgments may not be made on a global basis: "If a court resolves a privilege dispute by bal-

7. Most of the reported cases addressing the issue are discussed and analyzed in I. Labovitz and Wm. Labovitz, *Attorney Client Privilege in Individual Bankruptcy Cases: An Emerging Oxymoron,* 104 COM. L.J. 301 (1999); *see also, Miller,* 247 B.R. at 709.

8. Courts have cited the Eighth Circuit's opinion in *Citibank, N.A. v. Andros,* 666 F.2d 1192 (8th Cir.1981) to support both sides of the debate. *See In re Smith,* 24 B.R. 3, 4 (Bankr. S.D.Fla.1982) (holding that the attorney-client privilege always passes to the trustee even if the debtor is an individual); *In re Silvio De Lindegg Ocean Dev. of America, Inc.,* 27 B.R. 28, 28 (Bankr.S.D.Fla.1982) (holding that an individual's attorney-client privilege never transfers to the trustee). However, the *Andros* decision does not on its face decide the

issue with respect to an individual debtor. *Andros,* 666 F.2d at 1193 ("This case presents the single issue of whether the trustee in bankruptcy may waive the attorney-client privilege of a corporate debtor, over the objection of officers of the debtor corporation.").

9. In this circuit, attorney-client communications lose their privileged character when the attorney is consulted to further a continuing or contemplated criminal or fraudulent scheme. *Pritchard–Keang,* 751 F.2d at 281. This crime-fraud exception to the attorney-client privilege requires a showing that the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme. *Id.*

ancing analyses, it must instead focus on specific facts and documents." *Foster*, 188 F.3d at 1265. Thus, in the case of any advice provided by Kennedy & Graven which the firm provided to Debtor in his individual as opposed to his DIP capacity, the question is not ripe for a ruling until a question is asked by the Trustee, an answer is refused, and a legal record made.

## B. Fifth Amendment

The Debtor asserts that, regardless of the application of the attorney-client privilege, disclosure of the information sought from Kennedy & Graven would violate his Fifth Amendment privilege against self-incrimination. The Fifth Amendment provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. 5. A proper assertion of the Fifth Amendment privilege requires three elements: (1) a compelled disclosure, (2) found to be testimonial, (3) which is incriminating. *In re Hunt*, 153 B.R. 445, 452 n. 11 (Bankr.N.D.Tex. 1992).

In general, there is no constitutional right not to be incriminated by the testimony of another. *Doe v. United States (In re Grand Jury Subpoenas)*, 144 F.3d 653, 663 (10th Cir.1998). The privilege against self-incrimination is solely for the benefit of the witness and is purely a personal privilege of the witness, not for the protection of other parties. *Id.* Accordingly, a party incriminated by evidence produced by a third party sustains no violation of his own Fifth Amendment rights. *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 55, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974). Therefore, in this case, compulsion of Debtor's attorney's testimony as to voluntary statements made by the Debtor does not implicate the Fifth Amendment's protection of the Debtor against compulsory self-incrimination. *Grand Jury Subpoenas*, 144 F.3d at 663; *Hunt*, 153 B.R. at 452 n. 11.

There is one exception to this rule, however. Where an attorney is being compelled to produce documents that the client could personally bar from production under the Fifth Amendment, the attorney to whom they are delivered for the purpose of obtaining legal advice should also be immune from subpoena. *In re Grand Jury Proceedings, Subpoenas For Documents*, 41 F.3d 377, 379 (8th Cir.1994); *Grand Jury Subpoenas*, 144 F.3d at 663 (citing *Fisher v. United States*, 425 U.S. 391, 396, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Such a scenario occurs only when the act of producing the documents themselves is both incriminating and testimonial. *Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1270 (10th Cir.1999).

> The act of producing evidence in response to a subpoena ... has communicative aspect of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by [their owner or the owner's agent]. It also would indicate the [owner or agent's] belief that the papers are those described in the subpoena ....

*Fisher*, 425 U.S. at 410, 96 S.Ct. 1569. Thus, the Supreme Court recognized that the act of producing documents can communicate the existence of the documents, possession or control of the documents, or the authenticity of the documents. *Id.; Grand Jury Proceedings*, 41 F.3d at 379.

> [C]ompulsion [is] clearly present, but the more difficult issues are whether the tacit averments [made by the act of production] are both "testimonial" and "incriminating" .... These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof.

*Fisher*, 425 U.S. at 410, 96 S.Ct. 1569; *Grand Jury Proceedings*, 41 F.3d at 379.

In this case, the Debtor has asserted a blanket claim of the Fifth

Amendment privilege. Such an assertion is generally not permissible. *In re French,* 127 B.R. 434, 439 (Bankr.D.Minn. 1991). While it is clear that the Debtor's assertion must fail with respect to *testimony* by Kennedy & Graven, the Fifth Amendment may prevent the production of some of the *documents* demanded by the Trustee. Under these circumstances, the Debtor's blanket assertion of the Fifth Amendment privilege prevents the court from considering the precise facts and circumstances of this case and determining whether the act of producing the documents demanded by the Trustee would be both testimonial and incriminating. *See Foster,* 188 F.3d at 1272. Thus, the court cannot made a determination regarding this issue until the Debtor claims the Fifth Amendment privilege as to the production of specific documents.

## C. Conclusion

Based upon the foregoing, I will order the law firm of Kennedy & Graven to appear for the deposition noticed by the Trustee. As to testimony regarding its representation of the Debtor as the DIP, the Trustee has waived any attorney-client privilege that may apply.

As to any testimony regarding Kennedy & Graven's representation of the Debtor individually, the Debtor may assert the attorney-client privilege with respect to specific questions, but such assertion must comply with the dictates of this opinion. If there are any disputes as to the propriety of the Debtor's assertion of the attorney-client privilege, the court will consider such assertion on a question by question basis.

Contrary to the Debtor's contention, the Fifth Amendment does not protect the Debtor from a third party's testimony. Thus, no deposition testimony of Kennedy & Graven shall be prevented on the basis of the Fifth Amendment.

Kennedy & Graven shall also be prepared to turn over the documents described in the Trustee's subpoena. However, counsel for the Debtor shall be permitted to review such documents prior to their delivery. The Debtor shall at that time make his assertions of attorney-client privilege as to any specific documents related to Kennedy & Graven's representation of the Debtor individually, within the dictates of this opinion. He may also assert the Fifth Amendment privilege as to specific documents, the production of which would be both testimonial and incriminating. If a dispute remains as to the propriety of any asserted privilege, the court will, through an in camera inspection if need be, determine whether producing any specific document would violate either privilege.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. The motion of the Plaintiff to compel discovery is GRANTED, in part.

2. The law firm of Kennedy & Graven shall appear for the deposition noticed by the Trustee.

3. As to testimony regarding Kennedy & Graven's representation of the Debtor as the DIP, the Trustee has waived any attorney-client privilege that may apply.

4. As to any testimony regarding Kennedy & Graven's representation of the Debtor individually, the Debtor may assert the attorney-client privilege with respect to specific questions, but such assertion must comply with the dictates of this opinion.

5. The Debtor may not assert the Fifth Amendment privilege as to any testimony by Kennedy & Graven.

6. The law firm of Kennedy & Graven shall be prepared to deliver the documents described in the Trustee's subpoena.

7. Prior to delivery of the documents, the Debtor shall be permitted to review them and assert the attorney-client privilege with respect to any specific documents related to Kennedy & Graven's rep-

resentation of him individually, but such assertion must comply with the dictates of this opinion.

8. Prior to the delivery of the documents, the Debtor may also assert the Fifth Amendment privilege as to specific documents for which the act of production would be both testimonial and incriminating.

9. If there is any further dispute as to the propriety of the Debtor's asserted privileges, the parties shall select a date and time to be heard before this court. The court shall at that time make a determination with regard to specific questions and specific documents.