**In re Louis J. PEARLMAN, Debtor.**

**No. 6:07–bk–00761–ABB.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Dec. 13, 2007.

Louis J. Pearlman, Windermere, FL, pro se.

Denise D. Dell–Powell, Jill E. Kelso, Akerman Senterfitt, Orlando, FL, Gregory M. Garno, Paul J. Battista, Genovese Job-

love & Battista PA, Miami, FL, for Trustee.

Miriam G. Suarez, United States Trustee, Orlando, FL, for U.S. Trustee.

## ORDER

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Motions To Compel Production of Documents (Doc. Nos.418, 645, 838) (collectively, the "Motions to Compel") filed by Soneet R. Kapila, the Chapter 11 Trustee ("Trustee") for the jointly administered bankruptcy estates of Louis J. Pearlman ("Pearlman"), Louis J. Pearlman Enterprises, Inc. ("LJPE"), Trans Continental Airlines, Inc. ("TCA"), Trans Continental Records, Inc. ("TCR"), and Trans Continental Studios, Inc. ("TCS"), seeking to compel the production of documents from attorney Robert Leventhal ("Leventhal"), the law firm of Leventhal and Slaughter, P.A. ("L & S"), and the law firm of Gray-Robinson, P.A. ("GR"). L & S filed a response to the Motion to Compel (Doc. No. 856).

A hearing was held on November 8, 2007 at which the Trustee, counsel for the Trustee, Leventhal, counsel for GR, counsel for the Official Unsecured Creditors Committee, and other parties in interest appeared.[1] The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings, hearing live argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### Background

Tatonka Capital Corporation, Integra Bank, N.A., American Bank of St. Paul, and First National Bank & Trust Company of Williston (collectively, the "Petitioning Creditors") filed involuntary Chapter 11 petitions against Pearlman and TCA (Case No. 6:07–bk–00762–ABB) on March 1, 2007. An involuntary Chapter 7 case was instituted against TCR on March 7, 2007 by Roberta D. Jordan, David D. Mathis, and Beverly Mathis (Case No. 6:07–bk–00832–ABB).[2] The involuntary petitions were not contested and Orders for relief were entered in the involuntary cases.

Gerald A. McHale, Jr., the Florida State Court Receiver[3] of LJPE, TCS, and several other Pearlman-related entities, filed

---

1. The Motions to Compel were served via mail on Pearlman in care of R. Fletcher Peacock, Pearlman's Federal Public Defender, at 201 S. Orange Avenue, Suite 300, Orlando, Florida 32801. Leventhal stated his firm notified Attorney Peacock of the hearing on the Trustee's Motions to Compel. No counsel from the Federal Public Defender's office filed a response to Motions to Compel or appeared at the hearing.

2. The case was converted to Chapter 11 on May 9, 2007.

3. Mr. McHale was appointed as a state court receiver of all the assets and properties of TCA, Trans Continental Airlines Travel Service, Inc., Trans Continental Enterprises, LLC a/k/a Trans Continental Enterprises, LLC and Louis J. Pearlman Enterprises, LLC on Febru-

ary 2, 2007 in a proceeding in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida Civil Division, Case No. 48–2006–CA–0111136–0. The Receivership Order was entered in response to the Verified Motion and Verified Complaint filed by the State of Florida, Office of Financial Regulation in the State Court Action. The Receivership Order includes a provision specifically granting Mr. McHale the authority to file voluntary petitions under Title 11 of the United States Code for the receivership entities. On February 22, 2007, the State Court expanded the scope of the Receivership Order, the related injunctions and the Receiver's powers over additional defendants, including, but not limited to, LJPE and TCS.

voluntary Chapter 11 petitions for LJPE (Case No. 6:07–bk–01505–ABB), TCS (Case No. 6:07–bk–01507–ABB), and Louis J. Pearlman Enterprises, LLC (Case No. 6:07–bk–01779–ABB). George Mills, as the Sole Director, filed voluntary Chapter 11 petitions for other Pearlman-related entities including Trans Continental Television Productions, Inc. (Case No. 6:07–bk–01856–ABB), Trans Continental Aviation, Inc. (Case No. 6:07–bk–02431–ABB), and Trans Continental Management, Inc. (Case No. 6:07–bk–02432–ABB).

Motions seeking the appointment of a Chapter 11 trustee were filed in the Pearlman and several Pearlman-related entity cases. The Trustee is the duly appointed Chapter 11 Trustee of the Pearlman, LJPE, TCA, TCR, TCS, Louis J. Pearlman, LLC, Trans Continental Television Productions, Inc., Trans Continental Aviation, Inc., and Trans Continental Management, Inc. bankruptcy estates (collectively, the "Debtors" and the debtor entities shall be referred to collectively hereinafter as the "Pearlman Entities"). The Debtors'

bankruptcy cases have been consolidated for procedural purposes and joint administration as captioned *In re Louis J. Pearlman,* Case No. 6:07–bk–00761–ABB.

Pearlman was indicted by a federal grand jury in the United States District Court for the Middle District of Florida, Orlando Division ("District Court"), and is being held by federal authorities. He was the principal of and/or had an interest in the Pearlman Entities and other various entities. He has made no appearance in the Debtors' cases or any of the other related cases.[4] He did not appear for a Rule 2004 examination duly scheduled by the Trustee. He, to date, has not assisted the Trustee in locating and pursuing assets of the Debtors' estates.

### Discovery

The Trustee's Motion for an Order Authorizing Rule 2004 Examinations and Discovery was granted by the Order entered on April 19, 2007 (Doc. No. 100) ("Discovery Order"), which authorizes the Trustee "to engage in any discovery that he deems necessary and appropriate to carry out his

---

4. The Court made the following findings and conclusions in the July 16, 2007 Order in the TCA case (Doc. No. 158):

> The Court received via facsimile on May 22, 2007 an Objection to Trustee's Motion to Compel and Assertion of 5th Amendment Rights and Assertion of Attorney Client Privilege (Doc. No. 104) ("Objection"), purportedly sent by "Louis J. Pearlman, *pro se.*" No contact information for Pearlman was provided. No coversheet or cover letter was included with the facsimile transmission and the "from" notation at the top of each page, which normally reflects the sender's facsimile number, is blank. The transmission bears the date and time stamp "05–22–07 01:02am." The Objection asserts Pearlman has a right to maintain the attorney-client privilege "with ALL attorneys who have represented me, past, present and future" and "I assert my right not to incriminate myself . . . ."
>
> The Objection does not constitute a pleading or paper filed with the Court. Submission of

the Objection by facsimile did not constitute a proper filing of a paper pursuant to the Court's Local Rules. The Objection, in violation of the governing rules, fails to set forth the signer's address and telephone number. The signature purporting to be Pearlman's is unauthenticated. The Objection shall not be considered.

.   .   .   .   .

The Objection does not constitute a pleading or paper filed with the Court and shall not be considered. Submission of the Objection by facsimile did not constitute a proper filing of a paper pursuant to Local Rule 9001–1. The Objection does not comply with Federal Rule of Bankruptcy Procedure 9011, which requires all papers shall state the signer's address and telephone number. The signature purporting to be Pearlman's is unauthenticated.

July 16, 2007 Order at pp. 3, 5–6 (*internal citation and footnote omitted* ).

statutory duties, including, without limitation, ... issuing subpoenas to, third parties ... without the need for further orders of this Court."

The Trustee discovered Leventhal and various attorneys associated with GR performed legal services for certain Pearlman-related entities and Pearlman, individually and jointly with certain entities, on various matters and may possess documents related thereto. The Trustee, in order to obtain all records related to the Debtors' affairs and to fully investigate all potential assets and claims of the various bankruptcy estates, served the following subpoenas (collectively, the "Subpoenas") pursuant to the Discovery Order: (i) Subpoenas *Duces Tecum* on L & S on June 28, 2007 in the Pearlman, LJPE, TCA, TCR, and TCS cases; and (ii) a Subpoena *Duces Tecum* on GR on August 31, 2007 in the Pearlman case.

Pearlman was involved in extensive business dealings conducted through numerous entities. Substantial assets are unaccounted for and the Debtors' financial records are incomplete or missing. Pearlman has not assisted the Trustee in locating, protecting, and pursuing assets of the Debtors' estates, nor is he likely to be in a position to do so due to his incarceration.

The information sought in the Subpoenas is vital to the Trustee's fulfillment of his fiduciary duties including: locating, and pursuing assets of the Debtors' estates for the benefit of their creditors; investigating the acts, conduct, assets, liabilities and financial condition of the Debtors, the operation of the Debtors' businesses, and any other matters relevant to these cases; and preparing and filing the lists, schedules and statements for the Debtors' estates. The Trustee is required to compile the information necessary to perform his

fiduciary duties from other sources, such as attorneys who previously represented Pearlman and/or Pearlman-related entities.

L & S and GR produced some documents responsive to the Subpoenas and provided privilege logs detailing the documents they withheld, asserting the documents are protected by the attorney-client privilege. L & S and GR seek direction from the Court as to their production obligations.

### Attorney–Client Privilege—Entities

The Trustee, pursuant to the United States Supreme Court case law, is the successor to and holds the attorney-client privilege of each of the Pearlman Entities. He holds the privilege with respect to all documents and information in the possession, custody, or control of L & S and GR pertaining to any matter in which either L & S or GR represented the Pearlman Entities. The Trustee, as the holder of the Pearlman Entities' attorney-client privileges, has the power to waive the privilege for each of the Pearlman Entities.

The Trustee maintains any risk of harm in granting control of the Debtors' attorney-client privileges can be overcome by the Trustee's non-waiver of the privileges. The Trustee asserts he, as the holder of the privileges, is entitled to turnover of the documents and information sought in the Subpoenas, but "does not intend to further waive the attorney-client privilege absent authorization by Court order."[5]

Turnover requires the exercise of control of the privilege through waiver. The documents and information related to the Pearlman Entities are not subject to turnover unless and until the attorney client privileges are waived by the Trustee as to the Pearlman Entities. The documents and information sought in the Subpoenas

---

**5.** Trustee's Affidavit (Doc. No. 838).

relating to the Pearlman Entities will be subject to turnover when the Trustee waives the privilege as to each of the Pearlman Entities.[6]

### Attorney–Client Privilege—Individual and Joint Representation

The Trustee seeks turnover of documents and information relating to L & S' and GR's representations of Pearlman individually and where either firm jointly represented Pearlman individually with Pearlman Entities. Leventhal stated L & S jointly represented Pearlman individually and some Pearlman-related entities on interrelated legal matters. The Trustee contends he controls Pearlman's individual attorney-client privilege and the attorney-client privilege relating to any matter in which L & S or GR jointly represented the Pearlman Entities with Pearlman individually.

The documents and information sought in the Subpoenas relating to the representation of Pearlman individually may ·be protected by the attorney-client privilege. The party asserting the attorney-client privilege carries the burden of establishing each element of the privilege has been satisfied. To the extent L & S or GR jointly represented Pearlman individually and Pearlman Entities on matters of common legal interest, their communications with counsel relating to the subject matter of the joint representation may be protected by the attorney-client privilege. The party asserting the joint client privilege carries the burden of establishing the existence of a joint representation and the applicability of the attorney-client privilege to the communications between the joint clients and the attorney.

Once the applicability of the attorney-client privilege is established, the issue for determination is who controls the privilege. The issue of whether a bankruptcy trustee controls the attorney-client privilege as to an individual debtor has been addressed by various federal courts. The majority of courts employ a balancing test whereby the specific facts of a case are evaluated and the benefits of granting access to the privilege are balanced against the risk of harm to the debtor. The Court adopts the balancing test.

### CONCLUSIONS OF LAW

The Trustee is the representative of the Debtors' bankruptcy estates pursuant to Section 323(a) of the Bankruptcy Code. He is required "... investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1106(a)(3) (2006). The Trustee is required, pursuant to Section 1106(a)(2), to file the Section 521(1) lists, schedules, and statements for the Debtors' cases since the Debtors have not filed such documents.

The documents and information sought in the Subpoenas relate to the Debtors' assets, liabilities, financial conditions, and business affairs. The documents and information are important to the administration of the Debtors' cases and the preparation of the Section 521(1) filings for each of the Debtors' estates.

### Attorney–Client Privilege—Entities

■ The documents and information sought by the Trustee from L & S and GR

---

6. An Order was entered on July 16, 2007 (Doc. No. 158) in the TCA case holding to the extent an attorney-client relationship existed between Attorney Rene Chamberlain and TCA, it is waiveable by the Trustee and that the Trustee had waived the privilege as to TCA. Attorney Chamberlain was directed to turnover the documents and information sought by the Trustee.

may be subject to an attorney-client privilege between either L & S and/or GR and the Pearlman Entities to the extent an attorney-client relationship existed between them. The privilege passed to, is controlled by, and may be waived by the Trustee to the extent an attorney-client privilege exists with respect to any of the Pearlman Entities. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 358, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (holding "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications.").

The Trustee, pursuant to *Weintraub*, holds and controls, and has the power to waive, the attorney-client privilege with respect to the pre-bankruptcy communications between the Pearlman Entities and the L & S and GR attorneys.

■ The Trustee, as held in the July 16, 2007 Order, waived the attorney-client privilege as to TCA, but has not waived the privilege as to the other Pearlman Entities. Waiver of the privilege is the prerequisite to turnover. *See, Weintraub*, 471 U.S. at 350, 358, 105 S.Ct. 1986 ("Indeed, a privilege that has been properly waived is not an 'applicable' privilege for the purposes of § 542(e) ... the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications."); *In re Courtney*, 372 B.R. 519, 521 (Bankr.M.D.Fla.2007) (granting the trustee's Motion to Waive Privilege and Compel Turnover where the trustee was "not looking to waive the attorney-client privilege in order to go after Debtor personally ... it is important to recognize that this is not a general waiver, but a limited waiver...."); *In re Lentek Intern., Inc.*, Case No. 6:03–bk–08035–KSJ, Adv. Pro. No. 6:05–ap–190–KSJ, 2006 WL

2987001, at *2, *3 (Bankr.M.D.Fla. Sept.12, 2006) (holding liquidating trustee had right to waive attorney-client privilege and granting (in part) his motion for turnover of documents); *In re Bame*, 251 B.R. 367, 377, 379 (Bankr.D.Minn.2000) (finding "by waiving the privilege, the Trustee may benefit the estate by recovery of assets" and ordering law firm to appear at deposition where trustee "waived any attorney-client privilege that may apply."); *In re Fairbanks*, 135 B.R. 717, 734 (Bankr. D.N.H.1991) (requiring the turnover of documents where "the attorney-client privilege asserted by the respondent law firm has been waived by the person presently holding that privilege.").

The documents and information related to the Pearlman Entities are not subject to turnover pursuant to 11 U.S.C. Section 542(e) unless and until the attorney-client privileges relating to them are waived by the Trustee. The Trustee has not waived the privilege as to each of the Pearlman Entities. The documents and information pertaining to matters in which either L & S or GR attorneys represented the Pearlman Entities will be subject to production upon the Trustee's waiver of the attorney-client privileges as to the Pearlman Entities.

### *Attorney–Client Privilege—Individual and Joint Representation*

■ The documents and information sought in the Subpoenas relating to the representation of Pearlman individually and Pearlman jointly with Pearlman Entities may be protected by the attorney-client privilege. The party asserting the individual attorney-client privilege must establish each element of the privilege to invoke it:

(1) The asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is (the) member of a bar of a

court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*U.S. v. Kelly,* 569 F.2d 928, 938 (5th Cir. 1978). "The burden of proof is on the individual asserting the privilege to demonstrate an attorney-client relationship." *Id.*

█ A joint client privilege is recognized when one attorney simultaneously represents two or more clients on a matter of common legal interest and their communications relate to the subject matter of the joint representation. 1 PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE U.S. § 4:30 (2d ed. 2007) ("On matters of common legal interest, each may be privy to the other's communications with the attorney without the attorney-client privilege protection being waived by that breach of confidentiality.") The party asserting the joint representation privilege carries the burden of establishing the existence of a joint representation and each element of the attorney-client privilege has been satisfied. *Id.* § 4.31 (explaining the determination of whether a joint representation existed requires factual analysis and turns upon "the unique circumstances of each case"); *Id.* § 4:37 ("As with any privilege, the one who claims it must assert it with some particularity and bear the burden of persuasion on the factual issues upon which the application of the rule turns.").

If it is determined the attorney-client privilege applies to pre-bankruptcy communications between Pearlman individually, or as a joint client with Pearlman Entities, and L & S and/or GR, the issue for determination is who controls the privilege. The Supreme Court did not address in *Weintraub* whether a bankruptcy trustee controls the attorney-privilege as to an individual debtor. *Weintraub,* 471 U.S. at 356, 105 S.Ct. 1986 ("But our holding today has no bearing on the problem of individual bankruptcy, which we have no reason to address in this case.") Various approaches have been employed by federal courts addressing the issue of who controls the individual attorney-client privilege in bankruptcy.

█ One court applied a blanket rule holding the privilege always passes from the individual debtor to the trustee "by operation of law." *In re Smith,* 24 B.R. 3, 5 (Bankr.S.D.Fla.1982). The blanket rule approach is inadequate because it does not take into consideration the potential harm an individual debtor may suffer in granting a trustee access to the privilege. Granting the Trustee control of the individual privilege carries a risk of potential harm to Pearlman. The information sought in the Subpoenas may contain information affecting Pearlman's criminal charges.

The majority of courts employ a balancing test whereby the specific facts of a case are evaluated and balanced, including the risk of harm to the debtor versus the benefit to the estate. *Foster v. Hill (In re Foster),* 188 F.3d 1259, 1268–69 (10th Cir. 1999); *In re Courtney,* 372 B.R. at 521; *In re Bame,* 251 B.R. at 377; In *re Bazemore,* 216 B.R. 1020, 1024 (Bankr.S.D.Ga.1998). The Court, based upon the weight of the case law and the facts and circumstances of this case, adopts the balancing test.

The Trustee's Motions to Compel are due to be granted in part.

Accordingly, it is

**ORDERED, ADJUDGED AND DECREED** that the Trustee's Motions to Compel are **GRANTED IN PART.** The Trustee is the holder of and controls, and has the power to waive, any attorney-client privilege that may have existed prepetition with respect to any matter in which L & S or GR counsel represented the Pearlman Entities. The documents and information sought in the Subpoenas pertaining to any matter in which either L & S or GR counsel represented the Pearlman Entities shall be subject to production when the Trustee waives the Pearlman Entities' attorney-client privileges; and it is further

**ORDERED, ADJUDGED AND DECREED** that, if it is established the attorney-client privilege applies to prepetition communications between Pearlman individually, or as a joint client with Pearlman Entities, and L & S or GR counsel, the balancing test will be utilized to determine who controls such privilege; and it is further

**ORDERED, ADJUDGED AND DECREED** that the Trustee's request for attorneys' fees and costs is hereby **DENIED.**